Ann BROWN, Plaintiff,

v.

HART, SCHAFFNER & MARX, Richard P. Hamilton, Jerome S. Gore, John R. Meinert, A. Robert Abboud, James F. Chambers, Jr., James E. Devitt, Arthur Gunzberg, Charles Marshall, Elmer Schlesinger, Lee S. Bickmore, Paul A. Conley, John D. Gray, Donald P. Jacobs, Burton B. Ruby, Raymond F. Farley, and Sam F. Segnar, Defendants.

No. 82 C 4333.

United States District Court,
N.D. Illinois, E.D.

Nov. 24, 1982.

Robert I. Harwood, Kass, Goodkind, Wechsler & Labaton, New York City, Peter Flynn, Cherry & Flynn, Chicago, Ill., for plaintiff.

Erskine D. Henderson, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendants; Stanley J. Parzen, Hart, Schaffner & Marx, Mayer, Brown & Platt, Chicago, Ill., of counsel.

## MEMORANDUM OPINION

KOCORAS, District Judge:

Plaintiff, Ann Brown, brings this derivative action against the Hart, Schaffner & Marx corporation ("HSM") and all of its directors, alleging violations of federal securities laws, as well as common law fraud and breach of fiduciary duty. Plaintiff owns 10 shares of HSM stock which she purchased on May 6, 1982, for $270.

Plaintiff filed this action on July 13, 1982, a little more than two months after making her $270 investment in HSM.[1] The action arises out of a business transaction which occurred in late June of 1982. At that time, HSM entered into an agreement with another corporation to purchase at a premium some HSM stock which the other corporation owned. Plaintiff's claims are predicated on the view that the $11 per share

---

**1.** Plaintiff asserts that in bringing this action she "will be an able HSM champion." Plaintiff's Revised Reply Memorandum at 10. Apparently, plaintiff, as "guided by her counsel," *id.*, is no stranger to the role of corporate "champion." Indeed, plaintiff must find the role quite comfortable, for although she professes ignorance of the details, she believes that she is currently the named plaintiff in at least five other pending actions initiated by her lawyers against corporations in which she has, in most instances, recently invested relatively small sums.

At her deposition, plaintiff's memory consistently failed her when she was asked how many shares she owned of the various corporations she is presently suing. Brown Deposition at 18–20. However, plaintiff thought it was possible that she might own "[m]aybe 10" shares of

CTS Corporation, *id.* at 17, and "over $100,000" worth of Pacific Fidelity Life Insurance Company, *id.* at 20.

Plaintiff is represented by the same counsel in all of her lawsuits against corporations, including this case. *Id.* at 15–17, 22–23. Somewhat surprisingly, in view of the fact that plaintiff has only six lawsuits currently pending, plaintiff's counsel, perhaps through inadvertence, included a paragraph from the complaint in one of the other cases in the complaint for this action. Although this case is pending in the Northern District of Illinois and is brought against HSM and its directors, paragraph 36 of the complaint requests relief for "CTS," a corporation on whose behalf plaintiff filed a derivative action in the Northern District of Indiana on May 14, 1982.

premium which HSM agreed to pay for its own shares constitutes "a waste and spoilation" of corporate assets to the detriment of both the company and its stockholders.

In her complaint, plaintiff makes extremely serious allegations against HSM's directors, charging them with fraudulent and deceitful conduct. According to plaintiff's allegations, the agreement by HSM to purchase its own stock from the other corporation "serve[d] no legitimate business purpose of HSM." Furthermore, plaintiff charges, the premium paid for the shares was "grossly excessive," and the "sole purpose and motivation" of the directors in causing HSM to agree to purchase its own shares was to enable themselves to retain their positions and "continue their domination and control" of the company.

As required by Fed.R.Civ.P. 23.1, plaintiff verified her complaint, stating:

Deponent is the plaintiff in the within action; deponent has read the foregoing complaint and knows the contents thereof; the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters deponent believes them to be true.

Complaint Verification. In addition, as required by Fed.R.Civ.P. 11, the complaint was signed by plaintiff's attorneys, certifying that to the best of their knowledge, information, and belief there was good ground to support it.

Pursuant to the filing of this action, the defendants deposed plaintiff on October 5, 1982. Plaintiff's deposition testimony revealed that although she had verified her complaint, she had done so without having even the vaguest notion of whether or not a factual basis existed for any of the grave charges she had made against the HSM directors. The only documents plaintiff had ever seen in connection with the case were her own handful of HSM stock certificates. The only information she had obtained prior to contacting her lawyers was her husband's opinion that the price paid by HSM for its shares was "excessive" and "unfair." Plaintiff testified that she

had done no research whatsoever to determine the factual or legal validity of her claims. Instead, according to her testimony, plaintiff left it to her lawyers to investigate the matter and determine whether there was good cause under the facts and the law to file a lawsuit. Plaintiff stated that she became satisfied that such an investigation had been conducted and that good cause existed for the action when her attorneys shortly thereafter filed a complaint in her name.

Having learned that plaintiff had no idea of what facts provided the basis for her claims, and being confronted with a complaint consisting largely of conclusory allegations, the defendant directors sought to depose plaintiff's attorneys in order to discover whether they had investigated the circumstances prior to filing suit on plaintiff's behalf, and, if so, to learn the nature and extent of that investigation.

The matter now before the court is a motion by which plaintiff seeks to preclude such discovery. Plaintiff requests this court to enter a protective order prohibiting the defendant directors from conducting any discovery of her lawyers. Plaintiff further requests this court to quash a subpoena duces tecum served on her lawyers requiring them to produce certain documents related to their investigation. Plaintiff advances several theories in support of this motion. First, plaintiff asserts a blanket claim of attorney-client privilege as to all "communications between plaintiff and [her lawyers]." Plaintiff's Memorandum in Support at 4. Second, plaintiff invokes the work product rule as a bar to discovery of all documents sought from her lawyers. Finally, plaintiff contends that "[d]efendants' inquiry is irrelevant and immaterial to the issue at bar." *Id.* at 7.

Rule 23.1 requiring verification of complaints in derivative actions "was originally adopted and has served since in part as a means to discourage 'strike suits' by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order

to get rid of them." *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966). And, while it is undeniable that derivative suits have played a rather important role in protecting corporate shareholders from the machinations of corporation insiders, *id.,* it is equally true that "nuisance" and "strike" suits cannot be tolerated under the guise of a derivative action ostensibly brought for the benefit of a corporation. Strike suits are a particularly repugnant species of blackmail. Such lawsuits are the base work of rapacious jackals whose declared concern for the corporate well-being camouflages their unwholesome appetite for corporate dollars. As one commentator noted in discussing the *Surowitz* case:

> Both individual and corporate defendants are put to great financial expense in the defense of stockholders' derivative suits. In addition, the corporation incurs indirect expenses, such as bad publicity and diversion of executives' time and energies from profitable corporate activities. This may lead to settlement even when there is no basis for the complaint; and the settlement-inducing nature of these suits, in turn, encourages plaintiffs and their fee-seeking attorneys to bring such unfounded strike suits. An interpretation of Rule [23.1] eliminating such abuses would thus serve a legitimate and useful purpose.

Note, *Verification as a Safeguard Against Abuse of Stockholders' Derivative Suits,* 18 Stan.L.Rev. 1221, 1222 (1966) (footnotes omitted).

■ Thus, while it is not required that the verifying plaintiff have detailed personal knowledge of the transactions or events that give rise to the suit, *see Surowitz, supra,* it is essential that "some person, party, attorney, advisor, or otherwise has responsibly investigated the allegations at the behest of the named plaintiff, who then stands behind the merits of the complaint." *Rogosin v. Steadman,* 65 F.R.D. 365, 367 (S.D.N.Y.1974). *Accord Porte v. Home Federal Savings & Loan Association of Chicago,* 409 F.Supp. 752, 754 (N.D.Ill.1976) ("Before a court can proceed with a derivative suit, it must be assured that the plaintiff or some other person has investigated the charges and found them to have substance.").

■ The court and the defendants are entitled to an assurance that this action is a legitimate one rather than a strike suit. Therefore, it must be determined whether a responsible investigation was conducted prior to the initiation of this action. Such knowledge is the object of the discovery sought by the defendants. Plaintiff has candidly admitted that she conducted no investigation of her own. Any investigation which might have been done prior to the filing of this action was done by plaintiff's lawyers. Plaintiff can hardly claim to be prejudiced by an inquiry into the nature of that investigation. Indeed, on the authority of *Surowitz,* the *Rogosin* court concluded that an evidentiary hearing was an appropriate method of exploring the facts surrounding the verification of a complaint in a derivative action.[2] Surely if such a

---

**2.** In *Rogosin,* the district court found authority to conduct such a hearing in the following passage from *Surowitz* which was quoted in part in the court's opinion:

> We assume it may be possible that there can be circumstances under which a district court could stop all proceedings in a derivative cause of action, relieve the defendants from filing an answer to charges of fraud, and conduct a pre-trial investigation to determine whether the plaintiff had falsely sworn either that the facts alleged in the complaint were true or that he had information which led him to believe they were true. And conceivably such a pre-trial investigation might possibly reveal facts surrounding the verifi-

cation of the complaint which could justify dismissal of the complaint with prejudice. 383 U.S. at 371, 86 S.Ct. at 850, *quoted in part at* 65 F.R.D. 365, 367.

Upon conducting the hearing, the *Rogosin* court held in a later opinion that the proof was inadequate to conclude that "a responsible investigation was carried out and its results communicated to [the] plaintiffs sufficient[ly] to permit them to responsibly institute and stand behind the complaint." 71 F.R.D. 514, 519 (S.D.N.Y.1976). It is noteworthy that the court displayed no reluctance to hear the testimony of attorneys regarding their investigative efforts. The discovery sought of the attorneys in the instant case is certainly a less intrusive

hearing is authorized, there can be no question that discovery must also be permitted into such matters.

■ Plaintiff's assertion of the attorney-client privilege is pointless in this situation. That privilege applies only to communications between a client and his attorney. *E.g., FTC v. Shaffner,* 626 F.2d 32, 37 (7th Cir.1980). It does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. *E.g., Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Here, it is patent that plaintiff was unable to communicate any relevant information to her attorneys in connection with their investigation of HSM. Plaintiff has admitted that she possessed no such information. Any investigation which the attorneys undertook must, therefore, have necessarily involved communication with persons other than their client. Such communications are not privileged.

■ Plaintiff similarly misapprehends the work product rule. That rule gives absolute protection to an attorney's mental impressions, conclusions, opinions, and legal theories. Fed.R.Civ.P. 26(b)(3). But it does not, as plaintiff suggests, shield from discovery all "documents reviewed or prepared" by an attorney in anticipation of litigation. Plaintiff's Memorandum in Support at 6. An attorney may not bring a document within the scope of the work product rule simply by reviewing it if it was not originally prepared in anticipation of litigation. Here, it is logical to assume that most, if not all, of the documents which plaintiff's attorneys may have reviewed in their investigation of HSM were not prepared in anticipation of this litigation. Documents of this nature cannot be classified as an attorney's work product. *E.g., Zucker v. Sable,* 72 F.R.D. 1, 3 (S.D.N.Y. 1975).

Furthermore, even documents which were prepared in anticipation of litigation are discoverable upon the requisite showing

means of obtaining that information than to compel their testimony on the subject in open

of substantial need for the materials and the inability to obtain their equivalent by other means. Fed.R.Civ.P. 26(b)(3). Such a need is apparent in this case, as is the defendant's inability to obtain the pertinent information elsewhere. "Where the benefit to the resolution of the suit outweighs the potential injury to the party from whom discovery is sought, . . . disclosure is required." *Loctite Corp. v. Fel-Pro, Inc.,* 667 F.2d 577, 582 (7th Cir.1981). In this case, the balance clearly tips in favor of disclosure of the information sought by the defendants.

Plaintiff's argument that the information sought is irrelevant and immaterial because the defendants have already deposed her is utterly specious and devoid of merit. Plaintiff's testimony was singularly unilluminating on the nature of the investigation which was conducted before this action was filed. Whether such an investigation was conducted, and, if so, its nature and scope are questions which must be answered before this action can proceed. It is highly inappropriate to suggest, as plaintiff does, that by requesting information on this subject "the director defendants seek to avoid litigating the merits of this action by engaging in harrassing and dilatory tactics designed solely to delay the prosecution of this matter." Motion for Protective Order ¶ 4. It is beyond peradventure that the information sought is both relevant and material to the determination of issues vital to the swift adjudication of this action. Contrary to plaintiff's contention, her subjective motivation in bringing this lawsuit is not the subject of the defendants' proposed inquiry. Rather, the defendants seek only to determine whether plaintiff has good grounds for this action, as established by her attorneys' investigation, or whether this is a strike suit initiated without any basis in fact.

Plaintiff's reliance on *Surowitz, supra,* is misplaced. *Surowitz* did not involve a ques-

court.

tion of using discovery to determine whether a proper investigation had been conducted prior to initiating a derivative action. There was never any doubt in *Surowitz* that the investigation was adequate. The plaintiff's attorney, an economist and Harvard graduate with the not inappropriate name of Brilliant, had filed two affidavits with the district court detailing the exhaustive investigation he had conducted over a number of months prior to filing the lawsuit. Here, the defendants merely seek to obtain through discovery the same sort of information that Mr. Brilliant furnished by affidavit in *Surowitz.* Manifestly, *Surowitz* does not stand for the proposition that such discovery is not permitted.

For the foregoing reasons, plaintiff's motion for a protective order and to quash the subpoena served on her attorneys is denied.