**In re DAYCO CORPORATION DERIVA-
TIVE SECURITIES LITIGATION.**

Nos. C-3-82-184, C-3-82-254, C-3-82-329
and C-3-82-405.

United States District Court,
S.D. Ohio, W.D.

Oct. 21, 1983.

Douglas G. Cole, Cincinnati, Ohio, Ira Rubin, Dayton, Ohio, for plaintiff Heist.

Richard Greenfield, Donald B. Lewis, Bala Cynwyd, Pa., Henry Ruth, Philadelphia, Pa., for plaintiff Blumburg.

Gene Mesh, Rick Wayne, Cincinnati, Ohio, Robert Stull, Jules Brody, New York City, for plaintiff Efros.

James Fornari, William Jarblum, Dermot G. Foley, New York City, for plaintiff Purcell.

James K. Robinson, Detroit, Mich., Dennis Daley, Donald Waggoner, Dayton, Ohio, for defendant Dayco Corp.

Justin D. Simon, Sidney Dickstein, Peter Morgan, Washington, D.C., for defendants Dourlet, Kahn, Wilson, McNeely, Hoffberger, Harris, Guttman, Stoddard and Merrell.

David Greer, David Rudwall, Dayton, Ohio, Robert Morvillo, New York City, for defendant Gordon.

Jacob K. Stein, Donald J. Mooney, Cincinnati, Ohio, for defendant Jacobs.

Barry P. Reich, Springfield, Ohio, Jed S. Rakoff, John L. Altieri, Jr., New York City, for defendant Curry.

Shea and Gould, New York City, for defendants Foreign Transactions Corp., Trachem Co. Ltd., Edith Reich, Edith Reich as Executrix of Jacob Reich, Brigette Jossemkumpt, Judith Reich and Michael Reich.

Robert G. Stachler, Cincinnati, Ohio, for defendants Ernst and Whinney.

Norman Ostrow, New York City, for defendant Jackson.

## ENTRY ON DEFENDANTS' MOTION TO DISMISS; FURTHER PROCEDURES ORDERED

RICE, District Judge.

Defendant Richard Jacob has moved (doc. # 77) to dismiss Counts 2, 3, 7 and portions of Counts 4 and 5 of the amended complaint filed by Plaintiffs Heist and Efros, for failure to comply with the verification and demand requirements of Fed.R.Civ.P. 23.1. The director defendants and Dayco have joined this motion (doc. # 83 & 97). While the motion has been fully briefed, Defendants now ask this Court to "defer further consideration of this motion until the determination of certain pending discovery motions, and if such discovery is ordered, until completion of that discovery." Reply Memorandum, doc. # 97, at 2. In a separate entry filed this date in this case, the Court has sustained, in part, motions to compel the discovery referred to by Defendants.

It is not clear, however, how any such discovery would aid the Court in disposing of the motion. As per the language of the rule ("The complaint shall also allege . . . ."), compliance with the "demand" requirement of the rule is usually tested by only examining the allegations of the complaint, as in a Rule 12(b)(6) motion. *See Heit v. Baird,* 567 F.2d 1157, 1159–60 n. 3 (1st Cir.1977); *Leff v. CIP Corp.,* 540 F.Supp. 857, 868 (S.D.Ohio 1982). *Cf.* 7A C. Wright & A. Miller, *Federal Practice and Procedure,* § 1831 at 301 (Supp.1982). On the other hand, discovery may be appropriate to determine if the verification requirement of the rule has been met. *Lewis v. Curtis,* 671 F.2d 779, 787–88 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). *Cf. Brown v. Hart,*

*Schaffner & Marx,* 96 F.R.D. 64 (N.D.Ill. 1982).

The Court, of course, will not rule on a motion if the movants, in effect, wish to withdraw it at this time. Likewise, Plaintiffs would presumably wish the Court to overrule the motion, or not rule on it at all. Accordingly, in order to clarify the record, Defendants should inform the Court (by way of a memorandum) within ten (10) days after receipt of this Entry, if they (a) wish to withdraw the motion at this time, subject to renewal, or (b) wish the motion to remain pending, subject to the proffering of information obtained in discovery. Should the latter course be followed, Plaintiffs will also be given the opportunity to submit appropriate materials, within twenty (20) days following the Defendants' submissions.

### DECISION AND ENTRY ON PENDING DISCOVERY MOTIONS; FURTHER PROCEDURES SET

Plaintiffs in these actions, consolidated for pretrial purposes, are stockholders of the Defendant Dayco Corporation. They have sued Dayco, twelve members of the board of directors of Dayco, and an employee of Dayco, alleging violations of § 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n and Rule 14a–9, 17 C.F.R. § 240.14a–9 (1983), promulgated thereunder, violations of the duty under state law to manage the corporation with due care, and violations of the civil portions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. These allegations grow out of certain publicized events in 1982, wherein it was revealed that one Edith Reich, an officer of Foreign Transactions Corporation (FTC), had supposedly received millions of dollars in commissions from Dayco for contracts with the Soviet Union, which later turned out to be nonexistent.[1] Based on these and other related events, Plaintiffs charge that Defendants defrauded the Dayco stockholders, mismanaged and wasted the assets of Dayco, and violated the federal securities laws and RICO.

Presently pending before the Court are several motions concerning discovery. They will be considered and disposed of seriatim.

I. *Motions by Plaintiffs to Compel Production of Special Committee Report and Related Documents; Defendants' Motion for a Protective Order; Plaintiffs' Motions to Reconsider*

Plaintiffs Heist and Efros (Doc. # 23) and Blumberg (Doc. # 25) have moved to compel production of a "Report of Counsel to the Special Review Committee of the Board of Directors of the Dayco Corporation" (hereinafter Special Committee report) and certain related documents. Concurrently, Defendants have moved (Doc. # 56) for a protective order to forestall production of said report and documents. In this Court's Entry of May 11, 1983, the Court noted that the report appeared to be discoverable under Fed.R.Civ.P. 26(b)(1), but that it might be protected by both the attorney-client privilege and work-product immunity. The Court further stated that the privilege had not been waived by a Dayco press release in August of 1982, since the substance of the report was not released. Entry at 1–2. The Court set further procedures to resolve whether the privilege or immunity did apply. *Id.* at 5.

Initially, the Court addresses Plaintiffs' motions (doc. # 82A & 85) to reconsider its earlier decision that the privilege, if it exists, had not been waived by the press release. Next, the Court considers whether, notwithstanding any privilege or immunity, Plaintiffs may discover the Special Committee report, and finally, whether Plaintiffs can discover the documents *related* to or referred to in the report.

---

1. Dayco is currently suing Mrs. Reich and FTC in the United States District Court in the Southern District of New York. *See, Dayco Corp. v. Foreign Transactions Corp.,* 705 F.2d 38 (2d Cir.1983). An effort by Plaintiffs to consolidate all Dayco-related proceedings in New York was overruled by the Judicial Panel on Multi-district Litigation.

## A. *Plaintiffs' Motions to Reconsider*

In January of 1982, a "Special Review Committee" of the Dayco Board of Directors retained the Washington, D.C., law firm of Dickstein, Shapiro & Morin (currently representing the Board in the instant litigation) to conduct an investigation into Dayco's involvement with FTC and to pursue litigation against FTC. On August 30, 1982, Dayco issued a two-page press release (attached to Doc. # 82A) which summarized the establishment of the Committee, the retention of the law firm, and the "findings" and "conclusions" of the Committee and counsel in the report completed on August 25, 1982 (which, *inter alia,* were that Mrs. Reich's allegations against Defendant Richard Jacob, Dayco's Chief Executive Officer, were "entirely unsubstantiated"). Neither the facts which led to those conclusions, nor the Report itself, were released.

Plaintiffs now ask this Court to reconsider its earlier decision that release of the findings, but not the substance, of the Report does not constitute a waiver of the privilege. They rely entirely on the recent decision in *Westmoreland v. CBS, Inc.,* 97 F.R.D. 703 (S.D.N.Y.1983). That case involved a libel action against CBS based on statements in a CBS television documentary. CBS conducted an internal investigation regarding the making of the documentary, which culminated in a written report and a public statement regarding the report. The public statement summarized the investigation, contained both the findings of the Report and CBS officials, and "also went on to criticize certain aspects of the broadcast." *Id.* at 705. Judge Leval held that any privilege which might have protected the report was waived by the public statement, since CBS did not treat the report "as a confidential internal matter." *Id.* at 706. The statement, Judge Leval observed,

> goes on to proclaim the thoroughness and professionalism with which [Burton] Benjamin conducted his investigation. *It*

summarizes evidence which Benjamin found. It purports to state what was Mr. Benjamin's conclusions ... and finally it implies, or states, that the Benjamin report substantiates the conclusion of the ... broadcast.

*Id.* (emphasis added).

The facts in *Westmoreland* are obviously quite analogous to those in the within case. Nevertheless, while the issue is a close one, this Court concludes that *Westmoreland* does not control this case. Generally, waiver of a privilege occurs when actions by the holder would make it unfair to insist that the privilege still exists. C. McCormick, *Evidence,* § 93 (E. Cleary, ed. 1972). Proposed Fed.R.Evid. 511 stated that waiver occurred when the holder "voluntarily discloses ... *any significant part* of the privileged matter." (emphasis added). This formulation, while not binding, has been accepted by a number of courts. *See,* 2 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 511 (1982 ed.) [hereinafter cited as Weinstein]. *Cf. United States v. Upjohn Co.,* 600 F.2d 1223, 1227 n. 12 (6th Cir.1979), *rev'd on other grounds,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("The corporation's voluntary disclosures ... amount to a waiver of the privilege only with respect to the facts actually disclosed.")

■ Here, Dayco did not release a "significant part" of the special committee report. It merely released the *findings* of the report; unlike *Westmoreland,* the press release did not summarize evidence found in the report, nor did it purport to combine those findings with those of the Directors. *Cf. Peck v. United States,* 514 F.Supp. 210, 212 (S.D.N.Y.1981), *appeal dismissed and writ of mandamus denied,* 680 F.2d 9 (2d Cir.1982) (government waived privilege protecting Task Force Report when it released detailed summary of same). Thus, no waiver of the privilege which might cover the report herein occurred by use of the press release.[2]

---

**2.** Even if the Court agreed that Dayco waived the privilege by issuing the press release, it would not automatically follow that the Special

Committee Report is discoverable. Given this Court's earlier conclusion, entry of May 11, 1983, at 3, that the report is also covered by

B. *May Plaintiffs Discover the Special Committee Report, Notwithstanding Any Privilege or Immunity?*

In its previous entry, the Court outlined the procedures to determine if Plaintiffs could obtain the report, assuming same was protected under either the attorney-client privilege or as work product immunity. The Court pointed out that in *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), the Fifth Circuit, in a stockholder's derivative suit, permitted the defendant corporation to assert the privilege "subject to the rights of the stockholders to show cause why it should not be invoked in the particular instance." *Id.* at 1103–04. The Court added:

> There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. The court can freely use *in camera* inspection or oral examination and freely avail itself of protective orders, a familiar device to preserve confidentiality in trade secret and other cases where the impact of revelation may be as great as in revealing a communication with counsel.

*Id.* at 1104.

In contrast to *Garner,* the Fifth Circuit in *In re International Systems and Controls Corp.,* 693 F.2d 1235 (5th Cir.1982), refused to apply the "good cause" standard to work product discovery in a stockholder's derivative suit. The Court pointed out that the "mutuality of interest" between the shareholders and management justified the use of a "balancing test" as set out in *Garner. Id.* at 1239. "But once there is sufficient anticipation of litigation to trigger the work product immunity ... this mutuality is destroyed .... The work product privilege is based on the existence of an adversarial relationship, not the quasi-fiduciary relationship analogized to in *Garner." Id.* The Court went on to apply the substantial need/undue hardship test, found in Fed.R. Civ.P. 26(b)(3), for discovery of work product. *Id.* at 1239–41.[3]

To aid in applying these principles, the Court requested Plaintiffs' counsel to submit affidavits on the issue of substantial need/undue hardship, and Defendants' counsel to submit the Special Committee Report to the Court for an in camera review. Counsel have so acted, and the Court has reviewed same. While the issue is a close one, the Court must conclude, *at this time,* that Plaintiffs have not demonstrated

---

work product immunity, a waiver of the privilege does not necessarily waive the immunity; the privilege can only be asserted by the holder of same, while the immunity is meant to prevent disclosure to opposing counsel. Thus, a *client* cannot necessarily "waive" the immunity. *See, In Re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir.1982); 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2029 at 201 (1970); Cohn, *The Work Product Doctrine: Protection, Not Privilege,* 71 Geo.L.J. 917, 936–37 (1983).

3. Defendants, in some of their earlier memoranda, and Plaintiffs at one point, transcript of April 21, 1983, proceedings at 14–15, seemed to question the validity of *Garner* or *International Systems,* and their applicability to this case. While neither case has been cited by the Sixth Circuit, this Court believes that they correctly interpret the law and should be applied in this circuit. *Id.* at 15. *Accord,* Weinstein, *supra,* ¶ 503(b)[05] at 503–58; Lewis, *Garner is Alive and Well in Securities Litigation,* 69 A.B.A.J. 903 (1983).

the sort of substantial need and undue hardship required under Rule 26(b)(3).

At the outset, the Court notes that since the Report can be considered both privileged communications *and* as attorney work-product,[4] the stricter test of *International Systems* (substantial need/undue hardship) and Rule 26(b)(3), rather than the "balancing test" of *Garner* must apply. At the same time, the Court's review of the Report does *not* reveal it to be "opinion work product," which some courts have given an "almost absolute protection." *International Systems*, 693 F.2d at 1240. Instead, the content of the Report is primarily factual in nature.

In their joint affidavit (Doc. # 72), Plaintiffs' counsel Cole and Mesh state that numerous depositions (at a cost of $5,000 each) would be necessary to replicate the information in this Report, including several in foreign countries. Affidavit, ¶ 4(c). Moreover, they point out that Special counsel (apparently) interviewed numerous Dayco employees. These employees, Plaintiffs argue, may have difficulty remembering events, or be hostile to Plaintiffs' counsel, if same are now deposed. *Id.*, ¶ 4(g), (i)–(j). Finally, they contend that Defendant Jeanette Curry, a former Dayco employee, would (now) plead the Fifth Amendment if she were deposed. *Id.*, ¶ 4(h).[5] Similar interests are advanced by counsel Lewis in his affidavit, Doc. # 71A.

This Court's review of the Special Committee Report certainly indicates that it would be of aid to Plaintiffs' counsel. But such relevancy, even if it might satisfy the *Garner* balancing test, *but see In re LTV Securities Litigation*, 89 F.R.D. 595, 608 (N.D.Tex.1981) (finding *Garner* not sat-

isfied in similar circumstances), does not meet the more rigorous standard for discovery of work product. A reading of the Report indicates that it was compiled largely through interviews of Dayco employees (and other individuals), and by compiling numerous documents. Both sources of information appear to be available to Plaintiffs' counsel: they can depose the individuals, and most of the documents are already in their possession, or perhaps available through further discovery (*see also,* part I.C. of this Entry, *infra*). While a $5,000 expense per deposition is not to be taken lightly in any litigation, it does not seem particularly onerous in *these* consolidated cases, involving a class action and (potentially) millions of dollars in damages. Finally, there is no certainty that Mrs. Curry (or any other deponent) will take the Fifth Amendment. Defendants have also suggested that use of a protective order at any deposition may obviate the need for the deponent asserting that right. Similarly, counsel and the Court can only speculate as to whether other deponents may have faulty memories, or display hostility, or whether said depositions would be prohibitively expensive, or even impossible to take.

In short, the record before the Court, *at this time,* does not reveal the "particularized showing," *International Systems*, 693 F.2d at 1241, necessary to order production of the Special Committee Report. As this case further proceeds, the Court will be ready to reconsider this ruling, in light of new or changed factual circumstances brought to the Court's attention by Plaintiffs' counsel. As of this writing, however, Plaintiffs have not met the undue hardship/particularized or substantial need test to justify production of the Report.

---

4. While Plaintiffs, in their earlier memoranda, contested the issue, there seems to be little doubt that the Report is covered by the attorney client privilege, *see, Baxter Travenol Laboratories, Inc. v. LeMay,* 89 F.R.D. 410, 413–14 (S.D.Ohio 1981) (listing factors which determine if privilege applies), *appeal dismissed,* 708 F.2d 721 (6th Cir.1982), or work product immunity, *see, International Systems,* 693 F.2d at 1238 (finding it "clearly correct" that similar report is within the immunity).

5. Plaintiffs also argue, Affidavit, ¶ 4(k), that Delaware's statutory right of inspection for shareholders gives them authority to view the Report. Del.Corp. Law Ann. § 220(b). However, it has been held that the statute, in effect, is analogous to the "balancing test" found in *Garner,* and by itself will not overcome a properly asserted claim of privilege or immunity. *In re LTV Securities Litigation,* 89 F.R.D. 595, 609–11 (N.D.Tex.1981).

### C. Related Documents

Plaintiffs' counsel have also requested discovery of certain documents submitted to Special Counsel in connection with the Report, and certain documents prepared by the accounting firm of Ernst & Whinney (E & W) for the Dayco board of directors in 1981.

■ ·With respect to the former, Defendants insist that virtually all have already been produced through discovery. Defendants' Joint Memorandum, Doc. # 84, pp. 3–5. The few remaining documents not produced, they contend, are witness interview notes and other materials which clearly fall under either the attorney-client privilege or work product immunity. *Id.* at 5–6, 9–10. Based on counsels' description of those materials, the Court must agree that they are not discoverable, at least without a showing of particularized need under Rule 26(b)(3). As with the Special Committee Report, Plaintiffs have not met this test at this time.

■ A different result obtains, however, for the documents prepared by E & W. Defendants argue that same fall under work product immunity, since they were prepared for Special Counsel to "assist" in its investigation, *see,* Cyril Moscow affidavit, Doc. # 56, Ex. B, and that same are subject to a "joint-defense": attorney-client privilege. The Court finds neither rationale compelling. First, Defendants rely entirely on *United States v. Arthur Young & Co.,* 677 F.2d 211 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983). That case fashioned a "work-product privilege," *id.* at 221, to protect "the work that independent auditors, retained by publicly owned companies to comply with the federal securities laws, put into preparation of tax accrual workpapers." *Id.* at 219.

Assuming the decision survives Supreme Court scrutiny, it does not control the within matters. Unlike this case, *Arthur Young*

involved an accounting firm aiding in the criminal defense of a company. This Court agrees with Judge Milton Shadur that "*Arthur Young* appears to stand alone," *United States v. I.C. Industries, Inc.,* 555 F.Supp. 219, 223 (N.D.Ill.1983), and simply does not stand for the proposition, as Defendants appear to think, that there exists an accountant-client privilege as fully enforceable as the attorney-client privilege.[6] Indeed, in the absence of a state or federal statutory authority, courts have uniformly declined to create such a privilege. *See, Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 341 L.Ed.2d 548 (1973); 23 C. Wright & K. Graham, *Federal Practice & Procedure,* § 5427 (1980). This Court similarly declines to create such a privilege, or to extend *Arthur Young* beyond the narrow confines of that case.

Second, the Court agrees with Plaintiffs that the degree of activity exhibited by E & W, in connection with the preparation of the disputed documents, does not fall under the "joint defense privilege." That privilege has been limited to "disclosure of privileged information by an attorney to actual or potential codefendants, or to their counsel, in the course of a joint defense . . . ." *In re LTV Securities Litigation, supra,* 89 F.R.D. at 604. Herein, there is no indication, from the Moscow affidavit or otherwise, that E & W conducted a "joint defense" with Dayco, or anticipated litigation against itself. Nor is E & W, in fact, currently a party defendant to this litigation.

For these reasons, the Court holds that any remaining documents related to the Special Committee Report need not be produced, but that six of the eight E & W documents in dispute are not privileged or immunized, and are discoverable as "relevant" material under Rule 26(b)(1). The first of the E & W documents (also supplied to the Court for in camera review) was prepared by Attorney Moscow for the Dayco board and appears to fall under the

---

6. While the Second Circuit spoke in terms of both a privilege and a work-product immunity, it is more proper to characterize its decision as creating a privilege for accountants. *See, I.C. Industries, Inc., supra,* 555 F.Supp. at 223 n. 7.

attorney-client privilege; the last document contains notes prepared by counsel regarding statements made by a witness, and appears to be attorney work-product. Accordingly, those documents need not (at least at this time) be produced.

II. *Motions by Defendants to Compel Plaintiffs to Answer Interrogatories and to Produce Documents are Sustained*

Both the Board of Directors Defendants (Doc. # 57) and Defendant Jacob (Doc. # 61) have moved to compel Plaintiffs, and/or their counsel, to answer certain interrogatories and to produce documents. These requests are predicated on the series of allegations, in Plaintiff's amended complaint, charging the director Defendants with receiving benefits and gifts from Dayco, thereby defrauding the corporation and embezzling and misappropriating corporate assets. The director Defendants submitted ten interrogatories and three document requests, asking Plaintiffs to identify the person with knowledge of these alleged events, to state the grounds of the allegation, and to identify every document that relates to the event alleged. Defendant Jacob submitted similar interrogatories and document requests regarding analogous allegations made against him.

Plaintiffs' counsel initially acknowledge that Plaintiffs themselves have no independent knowledge of the above allegations; instead, counsel learned of same from newspaper articles, interviews with Dayco employees, and other sources. Counsel further argue that any answers are fully protected under work product immunity, in that they would need to reveal oral communications made to them, and their own mental processes, in order to answer the interrogatories. Counsel also contend that Defendants' request amounts to nothing less than a "search and destroy" mission against "whistle-blowing" Dayco employees, that it would be improper, this early in the litigation to give (in effect) Defendants a list of

trial witnesses, and that the documents in Plaintiffs' possession need not be disclosed, since Defendants already have access to same.

The Court initially agrees with Plaintiffs that the recent decision of *Brown v. Hart, Schaffner & Marx,* 96 F.R.D. 64 (N.D.Ill. 1982) does not fully control this case. *Brown* does have some similarities to the instant litigation: both are stockholders derivative suits coupled with allegations of federal securities laws violations, wherein the plaintiffs have no personal knowledge of the facts underlying the allegations. Given the verification requirements of Rules 11 and 23.1, and "being confronted with a complaint consisting largely of conclusory allegations," *id.* at 66, the Court permitted the director Defendants therein to depose Plaintiff's counsel to determine "whether a responsible investigation was conducted prior to the initiation of the action." *Id.* at 67. The *Brown* court held that such discovery was justified since the "court and the defendants are entitled to an assurance that this action is a legitimate one rather than a strike suit." *Id.* The court also held that any such information was not protected by the attorney-client privilege or work-product immunity. *Id.* at 68–69.

Defendants have hinted that they regard the allegations regarding improper gifts and benefits from Dayco as bordering on a "strike suit." *See, e.g.,* Transcript of Proceedings of April 21, 1983, at 22–24 (remarks of Jacob Stein, counsel for Defendant Jacob). But they have not explicitly made such a charge, nor, as the Court understands it, do they desire discovery to determine whether Plaintiffs' counsel made a "responsible investigation" of the allegations in the complaint. In short, the Court does not find that Defendants seek the sort of discovery of counsel permitted in *Brown* (although, admittedly, the interrogatories at issue herein seek information similar to that permitted in that case).[7]

---

7. The Court is aware that Defendants wish to depose Plaintiffs' counsel, at least in part for

the reasons set forth in, and on the authority of, *Brown.* These depositions have been post-

Nevertheless, without the need to fully embrace the *Brown* decision, the Court holds that the interrogatories and document requests at issue are proper. The information requested in the interrogatories is simply not work product, that is, materials "prepared in anticipation of litigation or for trial," Rule 26(b)(3). Defendants may discover the *facts* upon which Plaintiffs, and/or their counsel, base their allegations. 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2023 at 194 (1970) [hereinafter cited as Wright & Miller]; Cohn, *supra,* note 2, at 923 & n. 43. Such facts include the names of witnesses from whom counsel obtained the information. *Id.; Roberson v. Ryder Trucklines, Inc.,* 41 F.R.D. 166, 167 (N.D.Miss.1966). While discovery is not the time to produce a list of *trial* witnesses, as Plaintiffs point out, Defendants are merely seeking (as the Court understands it) a list of "occurrence witnesses," which are discoverable at any time. Wright & Miller, *supra,* § 2013 at 105–06. Plaintiffs' charge that Defendants wish to "punish" these witnesses is a matter of speculation; in any event, the risk of same can be diminished by the use of a protective order (if Plaintiffs wish), and/or the threat of appropriate sanctions under Rule 37(b) for abusing discovery. To the extent that Plaintiffs believe that most of the requested documents are already in the possession of Defendants, they may produce a *list* of the documents, rather than the documents themselves. This list should be keyed as much as possible, to the specific document requests.[8]

For these reasons, and with the limitations noted above, the Court sustains Defendants' motions to compel plaintiffs to answer interrogatories and produce documents.

### III. Plaintiffs' Motions to Compel Production of Documents Sustained in Part and Overruled in Part

Plaintiffs have moved (Docs. 62 & 90) to compel production of a variety of documents relating to the allegations of mismanagement of Dayco funds. These requests include various expense, inventory, and employment records from Dayco, the personal tax returns for 1979–1981 and other financial records from Defendant Jacob and certain expense accounts of director Dourlet. Defendants oppose the motions on several grounds, including that the requests are too broad or irrelevant, should not include any material before the statute of limitations has run, and that Jacob's tax returns should not be produced.

In the main, the Court does not find these objections to be well taken. First, Defendants correctly point out that a court can limit discovery to a period within the applicable statute of limitations. *See, Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352, 98 S.Ct. 2380, 2390, 57 L.Ed.2d 253 (1978). The parties also seem to agree that the statute of limitations for the fraud allegations in the complaint would be the four-year period found in Ohio Rev.Code Ann. § 2305.09(c) (Page 1982). Some of the allegations reach back to the early 1970's, or even before, and discovery into same might be barred if a four-year statute were strictly applied to the filing dates of the original or amended complaints. However, Plaintiffs correctly point out that accrual of a fraud action can be tolled until discovery of the fraud, *see, Schofield v. Cleveland Trust*

---

poned, the Court understands, until, *inter alia,* the Court disposes of the discovery motions addressed in this entry. Should the issue arise in the future, the Court wishes to state that it does not purport to settle this issue in this entry.

**8.** The Court does not agree with Plaintiffs that the 1980 amendment to Rule 34(b) precludes such a "keying" of the list. The rule now

requires that parties "shall produce [documents] as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." The Court agrees that this language does not grant an absolute option to the producer of documents; rather, he should "produce them in a form that will make reasonable use of them possible." Wright & Miller, *supra,* § 2213 at 202 (Supp.1982) (footnote omitted).

*Co.,* 149 Ohio St. 133, 78 N.E.2d 167 (1948).[9] Of course, when the action accrued may itself become a disputed factual issue. Accordingly, it is not proper at this time to limit discovery to the 1978–1982 period, when Plaintiffs claim that fraud occurring before that period is still actionable, due to the statute of limitations having been tolled by the concealment of the fraud by Defendants.

Second, this Court has previously held "[a]lthough tax returns are not privileged, there is a public policy against unnecessary disclosure, in order that taxpayers can be encouraged to file accurate returns." *Credit Life Ins. Co. v. Uniworld Ins. Co., Ltd.,* 94 F.R.D. 113, 120 (S.D.Ohio 1982). Disclosure of tax returns is appropriate if they are significantly relevant to issues raised in the case, or if other appropriate factors are present. *Id.* at 120–21. The Court finds that Jacob's tax returns should be produced. They are reasonably calculated to lead to the discovery of admissible evidence or have relevancy, as that term is broadly used in Rule 26(b)(1), to the allegation of misuse of Dayco funds, allegedly not reported by Jacob as income. Any abuse of the returns can be forestalled by the use of a protective order.

Third, the Court agrees with Plaintiffs that *all* of Defendant Dourlet's expense reports should be produced. Even those reports for 1982 or 1983, while not the basis of any allegations in the complaint, may have *some* relevancy under Rule 26(b)(1) to allegations of misuse of Dayco funds in prior years or, at the least, lead to the discovery of admissible evidence. Similarly, the request for Jacob's financial records seems reasonable, in light of Plaintiffs' statement that it only seeks records of "specifically named" business ventures. Plaintiffs' Reply Memorandum, Doc. # 84A, p. 9. The Court takes this to mean business ventures or transactions specifically mentioned in ¶ 33 of the amended complaint.

■ Finally, the Court must agree with two of Defendants' objections. In a supplemental memorandum (Doc. # 89), Defendants point out that the amended complaint contains no allegations which would justify production of expense reports unrelated to FTC transactions, *or* to alleged payments of travel expenses to Dayco officers and directors. Even conceding the broad definition of "relevancy" in Rule 26(b)(1), the Court must agree with Defendants that expense reports unrelated to the aforementioned categories are not relevant to this litigation and need not be produced. In addition, the Court agrees with Defendant Dayco's suggestion, Dayco's Memorandum Contra, Doc. # 74, p. 3, that the expense reports relating to the "various employees," a phrase used in ¶ 33(c) of the amended complaint, need not be produced until the specific employees are named. This seems to be a reasonable request, especially in light of the Court's ruling, *supra,* that Plaintiffs are obliged to answer interrogatories which require the naming of persons (presumably, Dayco employees) who furnished information regarding ¶ 33.

For these reasons, the Court sustains Plaintiffs' motions to compel in part, including those portions of the motion not expressly discussed or summarized in this opinion. (The Court is referring to the requests for the production of expense reports concerning individuals other than Dourlet, certain inventory records maintained by John Haley, from January 1, 1978, to the present, and certain employment records from November 1, 1966, to the present. For the reasons stated in Plaintiffs' memoranda, the Court agrees that these records are relevant and should be produced.) This ruling is made with the proviso that certain expense reports need not be produced until Plaintiffs identify who are "various employees." The motion is overruled in part, with regard to expense

---

9. The Ohio Supreme Court has also recently adopted a "discovery" rule in other torts contexts. *See, Skidmore & Hall v. Rottman,* 5 Ohio St.3d 210, 450 N.E.2d 684 (1983) (attorney malpractice); *Oliver v. Kaiser Community Health Found.,* 5 Ohio St.3d 111, 449 N.E.2d 438 (1983) (medical malpractice); *O'Stricker v. Jim Walter Corp.,* 4 Ohio St.3d 84, 447 N.E.2d 727 (1983) (asbestos litigation).

reports unrelated to FTC or to *specific* factual allegations made in ¶ 33 of the amended complaint. (The Court also agrees that Jacob need *not* himself produce documents not under his *personal* control. *See,* Jacob's Memorandum Contra, Doc. # 99).

## IV. *Plaintiffs' Motion to Compel Production of Curry Diary*

Plaintiffs have moved to compel production of a diary kept by Defendant Curry, during some of the events at issue herein (Doc. # 64). Defendants argue that this document is protected by the attorney-client privilege and as work-product immunity. The parties have fully briefed this motion, and submitted affidavits on same. However, the Court agrees with Plaintiffs that it would be useful, as it did with previous motions, to review the disputed document in camera. The Court will rule on the motion after reviewing the diary. This diary should be mailed to the Court, by counsel for Defendant Curry, within twenty days from date of receipt of this Entry.

## V. *Conclusion*

Most of the motions to compel discovery, discussed in this entry, are accompanied by requests for an award of expenses pursuant to Rule 37(a)(4). Several of these motions have been sustained, at least in part. Nevertheless, the Court declines, at this time, to award expenses to the moving party on any of the motions. The difficulty of the legal and factual issues in this case, well-documented in the parties' excellent memoranda, justifies not granting any expenses. *See, Baxter Travenol Laboratories, Inc. v. LeMay,* 89 F.R.D. 410, 417 (S.D.Ohio 1981), *appeal dismissed,* 708 F.2d 721 (6th Cir. 1982). Moreover, such an award, at this time, might be difficult to calculate, given that at least one of the motions remains undecided (relating to the Curry diary), and two *may* be sustained in the future (relating to the Special Committee Report). For these reasons, the Court declines to award expenses.

In summary, the Court disposes of the motions as follows:

1. Plaintiffs' motions to reconsider are overruled. Plaintiffs' motions to compel production of the Special Committee Report and related documents are overruled, with respect to the Report and certain related documents, including two of the E & W documents (a document prepared by Attorney Moscow for the Dayco Board and notes prepared by counsel regarding statements made by a witness). The motions are sustained in all other respects. Defendants' motion for a protective order is deemed moot and is not ruled upon.

2. Defendants' motions to compel Plaintiffs to answer interrogatories and to produce (or list) documents are sustained.

3. Plaintiffs' motions to compel production of a variety of documents are sustained in part, to the extent the motions seek expense, inventory, and employment records from Dayco, the personal tax returns for 1979–1981 and other financial records from Jacob, and expense accounts of certain directors. They are overruled to the extent that the motions seek expense reports (a) unrelated to FTC actions or specific factual allegations made in the amended complaint, and (b) on "various employees" until those employees are named.

4. Plaintiffs' motion to compel production of the Curry diary is not ruled upon at this time, until the document is reviewed in camera.

5. The parties' motions for awards of expenses are overruled at this time.

The production of all documents mentioned above (including the filing of the Curry diary with this Court under seal) should be made within twenty days after receipt of notice of this Entry. The Court has suggested that protective orders may be useful in the production of some of this material, and leaves to counsel the task of drawing up such orders within twenty days. If protective orders are desired but cannot be agreed upon, counsel should promptly so

inform this Court. Finally, this Court stands ready to reconsider the ruling on the Special Committee Report, should changing factual circumstances justify same.