**In re DAYCO CORPORATION DERIVATIVE SECURITIES LITIGATION.**

No. C–3–82–184, C–3–82–254, C–3–82–329 and C–3–82–405.

United States District Court, S.D. Ohio, W.D.

March 9, 1984.

See also 102 F.R.D. 624, and 102 F.R.D. 633.

Douglas G. Cole, Cincinnati, Ohio, Ira Rubin, Dayton, Ohio, for plaintiff Heist.

Richard Greenfield, Donald B. Lewis, Bala Cynwyd, Pa., Henry S. Ruth, Jr., Philadelphia, Pa., for plaintiff Blumburg.

Gene Mesh, Cincinnati, Ohio, Robert Stull, Jules Brody, New York City, for plaintiff Efros.

James Fornari, William Jarblum, New York City, Dermot G. Foley, New York City, for plaintiff Purcell.

James K. Robinson, Detroit, Mich., Denis Daly, Dayton, Ohio, for defendant Dayco Corp.

Howard Schiffman, Sidney Dickstein, Washington, D.C., for defendants Dourlet, Kahn, Wilson, McNeely, Hoffberger, Harris, Guttman, Stoddard, Merrell.

David Greer, Dayton, Ohio, Robert Morvillo, New York City, for defendant Gordon.

Jacob K. Stein, Cincinnati, Ohio, for defendant Jacobs.

Robert G. Stachler, Cincinnati, Ohio, for defendant Ernst and Whinney.

Barry P. Reich, Springfield, Ohio, Jed S. Rakoff, John L. Altieri, Jr., New York City, for defendant Curry.

Norman Ostrow, New York City, for defendant Jackson.

Shea & Gould, New York City, for defendants Foreign Transactions Corp., Trachem Co. Ltd., Edith Reich, Edith Reich as Executrix of Estate of Jacob Reich, Brigette Jossemkumpt, Judith Reich, Michael Reich.

## DECISION AND ENTRY ON PENDING DISCOVERY MOTIONS AND MOTION FOR CLARIFICATION

RICE, District Judge.

A number of motions are pending in these consolidated cases. Defendants' motions to disqualify Plaintiff Heist and his attorney are disposed of in a separate decision and entry filed this date. In the instant entry, the Court addresses two pending discovery motions and a motion requesting clarification of this Court's earlier decision regarding discovery. Familiarity with the Court's previous decision on discovery motions, 99 F.R.D. 616 (S.D.Ohio 1983), is presumed.

## I. PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CURRY DIARY IS OVERRULED

Plaintiffs have moved (doc. # 64) to compel the production of certain documents compiled by Defendant Jeanette Curry, while in the employ of Dayco. These documents, referred to as the Curry "diary" or "chronology", were, according to Plaintiffs, compiled between May of 1979 and May of 1982, and concern the transactions between FTC and Dayco which form the basis for a portion of the present lawsuit. The motion was fully briefed, but this Court requested submission of a copy of the diary under seal for an *in camera* inspection. 99 F.R.D. at 626. Said document has been filed with the Court.

Plaintiffs argue that this document (or set of documents) is simply a business record relevant to this case and properly discoverable. They contend that Mrs. Curry kept the diary between May of 1979 and May of 1981 on her own, and compiled the diary for the following year at the request of Defendant Richard Jacob, Chief Executive Officer of Dayco. Most of this information appears to come from a newspaper account of some aspects of this litigation in the March 27, 1983, issue of the *Dayton Daily News*, written by reporter Andrew Alexander. Alexander indicates therein that he obtained a copy of the Curry diary, from an unidentified source, and quotes extensively from same. Thus, Plaintiffs conclude, any attorney-client privilege or work-product immunity which might attach to some or all of the diary has been waived. In contrast, Defendants (Dayco and Mrs. Curry) acknowledge that the diary exists, but insist that it is fully covered by the privilege and immunity, that no authorized disclosure was made to Mr. Alexander, that there has been no waiver, and that the document, at this time, should not be discoverable.

In the present state of the record, the Court agrees with Defendants. Affidavits submitted by Ms. Curry and Cyril Moscow, outside counsel to Dayco (docs. # 80 & 106), indicate that the diary was compiled

by Ms. Curry at Moscow's direction starting in May of 1981, to chronicle events concerning Dayco and Edith Reich from May of 1979 forward. Moscow also avers that his request to Ms. Curry was part of an investigation of the Dayco/Reich affair, which by December of 1981 was being made in anticipation of litigation. Both Curry and Moscow deny giving or authorizing disclosure of the diary to Mr. Alexander, and Denis Daly, general counsel to Dayco, avers that only senior employees and officers of Dayco, and Dayco's counsel and accountants have been permitted access to the diary. Exhibit attached to doc. # 79; doc. # 88. Plaintiffs have not offered any challenge to these statements, by way of affidavits or otherwise.

■ Under these facts, and based on the Court's *in camera* review of the document in question, it seems clear that the Curry diary should be considered to fall under both the attorney-corporate client privilege, and work-product immunity (for the latter, at least since December of 1981). *See Baxter Travenol Laboratories, Inc. v. LeMay*, 89 F.R.D. 410, 413–14 (S.D.Ohio 1981) (holding that privilege applies in similar factual circumstances), *appeal dismissed mem.*, 708 F.2d 721 (6th Cir.1983); *FTC v. Grolier, Inc.*, 462 U.S. 19, 103 S.Ct. 2209, 2213–14, 76 L.Ed.2d 387 (1983) (discussing immunity). Absent any indication that Ms. Curry or Dayco officials voluntarily gave the diary to the *Dayton Daily News*, publication of excerpts of same should not be considered a waiver of the privilege. J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 503(a)(4)[01] at 503–31 (1982 ed.) ("Communications which were intended to be confidential but are intercepted despite reasonable precautions remain privileged.") (footnote omitted). *See also* 99 F.R.D. at 619. *But cf.* 8 Wigmore on Evidence §§ 2325–26 (McNaughton ed. 1961) (suggesting that in some cases, even unintended disclosures can waive the privilege). Moreover, as this Court observed earlier in the litigation, 99 F.R.D. at 619–20 n. 2, the actions of a client do not necessarily "waive" the immunity. Nor has counsel in this case waived the immunity, given the

statements in Daly's affidavit that only selected personnel have access to the diary. *See United States v. A.T. & T.*, 642 F.2d 1285, 1298–1300 (D.C.Cir.1980).

■ In addition, Plaintiffs, at this point in time, have not demonstrated the sort of "substantial need" or "undue hardship" which could justify invasion of the immunity. *See* 99 F.R.D. at 620–21. As Defendants point out, Plaintiffs could depose Ms. Curry or other Dayco executives who could, arguably at least, provide the information found in the diary. Nor have Plaintiffs convinced the Court that they are unable to properly prosecute this case at this time without the diary. Once again, however, the Court notes that it stands ready to reconsider this conclusion should circumstances materially change.

For all of these reasons, Plaintiffs' motion to compel is overruled.

## II. PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CERTAIN EXPENSE REPORTS IS SUSTAINED; FURTHER PROCEDURES SET

Earlier in the litigation, Plaintiffs moved (Docs. # 62 & 90) to compel production of, *inter alia*, expense reports of "various employees" of Dayco, as that phrase was used in ¶ 33(a)–(b) of the amended complaint. These employees were accused of misusing corporate expense accounts. In its earlier decision, the Court sustained the motion, subject to the proviso that the reports "need not be produced until the specific employees are named." 99 F.R.D. at 625. Although the Court mentioned that these employees would or could be named in answers to interrogatories propounded by Defendants, *id.*, the Court did not further discuss how those employees should be "named."

The parties now cannot agree on that process, and Plaintiffs have moved (doc. # 128) to compel production of the expense reports. It appears that Plaintiffs provided the names of five Dayco employees, through answers to interrogatories and by a letter to defense counsel. Characterizing

the charges against these employees as "very serious," Dayco's Memorandum Contra, doc. # 131, p. 3, defendant now insists that these individuals be named in an amendment to the amended complaint, so the verification requirements of Fed.R. Civ.P. 11 & 23.1 can apply to such allegations. In response, Plaintiffs contend that they have fully complied with this Court's decision, and that the allegations in the amended complaint are sufficient as they stand.

■ The Court agrees with Plaintiffs that an amendment to the complaint, as contemplated by Defendant, is unnecessary. Even assuming that Defendant's arguments are correct (i.e., that the "serious charges" against the five Dayco employees mandates their inclusion in the complaint under Rules 11 & 23.1), it does not follow that discovery cannot go forward on those individuals until and if the complaint is further amended. Defendant cites no authority for the proposition, nor could this Court uncover any, that the verification requirements of Rules 11 and 23.1 restrict ongoing discovery until and if Defendant challenges Plaintiffs' verification of their complaint. No such challenge is currently pending before the Court. Nor has Defendant challenged the sufficiency of the allegations of misconduct in the complaint under Fed.R.Civ.P. 8, 9, or 12.

For these reasons, the Court sustains Plaintiffs' motion to compel.

The expense reports in question must be furnished Plaintiffs' counsel within 20 days from date of receipt of notice of this Decision. Plaintiffs have also asked for an award of expenses, pursuant to Fed.R. Civ.P. 37(a)(4). Plaintiffs are requested, within 20 days after receipt of this entry, to file an affidavit indicating in sufficient detail "the reasonable expenses incurred in obtaining" or preparing for this particular motion, plus any memorandum they may wish to file. The request will then be briefed according to S.D.Ohio R. 4.0.2, and then decided by this Court (after a hearing, if necessary).

## III. DEFENDANT JACOB'S MOTION FOR CLARIFICATION IS SUSTAINED; JACOB ORDERED TO COMPLY WITH DOCUMENT REQUEST GIVEN CERTAIN UNDERSTANDINGS

Earlier in this litigation, Plaintiffs also moved to compel production of certain financial records of Defendant Jacob, relating to business ventures pursued by Jacob. The Court sustained the motion as follows:

> Similarly, the request for Jacob's financial records seems reasonable, in light of Plaintiffs' statement that it only seeks records of "specifically named" business ventures. Plaintiffs' Reply Memorandum, doc. # 84A, p. 9. The Court takes this to mean business ventures or transactions specifically mentioned in ¶ 33 of the amended complaint.

99 F.R.D. at 625.

■ Jacob has now moved (doc. # 119) for clarification of this portion of the decision, pointing out, correctly, that the "business ventures or transactions" are *not* "specifically mentioned in ¶ 33 of the amended complaint." The 16 ventures *are* named in Plaintiffs' Second and Third Request for Production of Documents. In addition, Jacob requests clarification on Plaintiffs' request for *"all* financial records" relating to those ventures, and the time period involved.

The Court agrees with Plaintiffs that the clarifications Jacob seeks are currently in the record, and that no further amendment of the complaint (as suggested by Jacob) is necessary for discovery to proceed. First, the 16 ventures are named by Plaintiffs, and financial records relating to same would seem "relevant," as that word is used in Fed.R.Civ.P. 26(b)(1), to the allegations that Jacob improperly used secretarial help with regard to same. The Court agrees with Jacob that a blanket request for *"all* financial records" would be overbroad. *See* Fed.R.Civ.P. 34(b) (request for production of documents shall describe same with "reasonable particularity"); *Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d

Cir.1975) (per curiam). However, the Court takes Plaintiffs at their word, Memorandum Contra, doc. # 123, p. 2, that they only seek, as financial records, all "general ledgers, quarterly net worth statements, tax returns, lists of all general and limited partners and partnership agreements" as to each venture.

Second, the document requests apparently do not mention any time limitations. However, the amended complaint *does* limit the allegations of wrongful conduct by Jacob to "the years of 1967–1981." Jacob, without conceding any impropriety on his part, argues that the records for 1978 through 1981 are irrelevant, since he stated in his answer to the complaint that he fully reimbursed his secretary after November 1, 1978, for work on his personal financial records. Assuming that statement to be true, the records for 1978 through 1981 could still be "relevant" under Rule 26(b)(1) to alleged improprieties in earlier years. Thus, Jacob, as does this Court, should view the request for the documents in question as covering the years 1967 through 1981.

With these understandings, the Court sustains the motion for clarification. These documents are ordered produced to Plaintiffs' counsel not later than 20 days from date of notice of this Decision.

## IV.   CONCLUSION

In summary, the Court (1) overrules Plaintiffs' motion to compel production of the Curry diary, (2) sustains Plaintiffs' motion to compel production of certain expense reports regarding Dayco employees (and sets further procedures governing an award of expenses on same), and (3) clarifies the Court's previous decision regarding Jacob's expense documents or reports.