Thomas A.J. **FAUSEK**, et al.,
**Plaintiffs–Appellees,**

v.

Robert E. **WHITE**, et al., Defendants,

**Selox, Inc., Appellant.**

No. 91–6087.

United States Court of Appeals,
Sixth Circuit.

Argued March 31, 1992.

Decided June 5, 1992.

Rehearing and Rehearing En Banc
Denied July 23, 1992.

J. Alan Hanover (argued), Donald S. Holm, III (briefed), Hanover, Walsh, Jalenak & Blair; Jack D. Kopald (briefed), McDonnell, Boyd, Smith & Solmson, Memphis, Tenn.; and Joe G. Harms, II (briefed), Salivar & Harms, St. Louis, Mo., for plaintiffs-appellees.

Gary D. Lander (argued and briefed) and David R. Evans (briefed), Chambliss & Bahner, Chattanooga, Tenn., for appellant.

Before: MARTIN, Circuit Judge; and LIVELY and BROWN, Senior Circuit Judges.

LIVELY, Senior Circuit Judge.

This appeal concerns a claim of attorney-client privilege. The privilege was claimed on behalf of a corporation that is not a party to the action. The issue arose when the plaintiffs attempted to depose an attorney who had advised the corporation and its controlling shareholder about financial dealings of the controlling shareholder involving stock of the corporation.

## I.

The plaintiffs are former shareholders of Selox, Inc. who allege that the defendant Robert E. White abused his position as majority shareholder, director and chief executive officer of Selox to the financial detriment of the plaintiffs. In the course of discovery the plaintiffs subpoenaed Joel

Richardson, an attorney for Selox and Robert White during the time in which the plaintiffs claim that White engaged in wrongful activities, to testify by deposition and to produce certain documents.

Richardson appeared for the deposition, but failed to produce the subpoenaed documents and refused to answer numerous questions concerning discussions with Robert White, other officers and directors of Selox, and parties with whom Selox had financial transactions during the period in question. An attorney for Selox attended the deposition and claimed an attorney-client privilege on behalf of Selox when plaintiffs' counsel propounded questions to Richardson about his discussions with Robert White and other Selox officers and directors. Richardson refused to answer the questions and they were certified to a magistrate judge.

Following a hearing the magistrate judge denied Selox's claim of privilege and directed Richardson to answer the questions and to provide the subpoenaed documents in his possession. Selox appealed to the district judge who had referred the case to the magistrate, and the district court affirmed the magistrate's order without opinion. Selox filed an interlocutory appeal and a motions panel of this court stayed the district court's order pending a hearing and decision by a regular panel of the court. Following oral argument the case was submitted to the present panel, and we now affirm the decision of the district court.

## II.

The plaintiffs, owners at one time of approximately forty percent of Selox's outstanding stock, sued Robert White and the other defendants directly in their individual capacities and did not plead a derivative action on behalf of Selox. The substance of their claim is that Robert White misrepresented the value of Selox stock as $13 to $15 per share at a time when he had in hand a qualified appraisal of its value at $116 per share. Robert White eventually sold Selox for $168 per share. This occurred, according to the plaintiffs, after White had engaged in an extensive fraudulent scheme to "squeeze out all minority shareholders" and had gained sole control of the corporation. According to the plaintiffs, Robert White, by virtue of his positions as majority shareholder, director and CEO, caused Selox to pay him an "exorbitant salary" and allowed him to "charge his personal nondeductible expenses to Selox." In addition, White allegedly misappropriated corporate opportunities for his own personal gain. The plaintiffs claim that White's actions caused the cash flow of Selox to be drained, and dividend payments to shareholders therefore ceased, thus reducing the apparent value of Selox stock.

The plaintiffs also claim that White met with potential buyers of Selox in the early 1980s, unbeknownst to the minority shareholders. The purpose of these meetings was to ascertain the market price of Selox, a price that turned out to be more than seventy million dollars (the amount for which White eventually sold Selox), or the equivalent of $168 per share. Not only did White fail to disclose these meetings with potential purchasers of the corporation, but he allegedly repeatedly told the other directors and shareholders that he was not interested in selling Selox.

Additionally, the plaintiffs claim that the fraudulent scheme included machinations involving Robert White's divorce. During divorce proceedings, White estimated the value of his Selox stock as $13 per share in a prepared financial statement dated August 19, 1987. However, a March 1987 financial statement that White used for other purposes valued his stock at $116 per share.

During this same period, White negotiated and obtained releases from his brothers, James and William White. These agreements purported to release Robert White from all liability relating to the purchase of Selox stock from his brothers. William White was paid one million dollars for his release. A covenant not to sue was also acquired from Robert White's son, Robert E. White, III, when White repurchased his son's Selox stock. It was shortly after all

the releases were obtained that Selox was sold for more than seventy million dollars.

Robert White and Selox were represented by the law firm of Miller & Martin, specifically by Joel Richardson. Richardson assisted in the negotiations for the liability releases and stock acquisitions from the former shareholders. The plaintiffs sought to discover Richardson's communications with Robert White concerning these transactions. Counsel for the plaintiffs asked questions about specific incidents and Richardson refused to answer on the ground that they sought confidential communications with Robert White and other Selox officials, and were protected by an attorney-client privilege.

### III.

■ The attorney-client privilege permitting a witness to withhold testimony is an exception to the general rule that a court is entitled to every witness's testimony and that witnesses fully disclose information known to them when called to testify. Thus, it should be construed narrowly. *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985). In *Humphreys, Hutcheson*, we described the elements of the privilege:

> This court set forth the essential elements of the attorney-client privilege in *United States v. Goldfarb*, 328 F.2d 280 (6th Cir.), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964), a^ *fol-*lows:
>
> > (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.
>
> *Id.* at 281, (quoting 8 J. Wigmore, *Evidence in Trials At Common Law* § 2292, at 554 (McNaughton rev. 1961))

755 F.2d at 1219 (footnote omitted).

The Supreme Court has recognized the importance of the privilege. In *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the Court stated:

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.... Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.

*Id.* at 389, 101 S.Ct. at 682.

■ Although important, the attorney-client privilege is not absolute; it applies only to the extent that it serves the "broader public interests." It has no application to legal advice in aid of a fraudulent scheme or criminal activity. See *In Re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir.1986) ("All reasons for the attorney-client privilege are completely eviscerated when a client consults an attorney not for advice on past misconduct, but for legal assistance in carrying out a contemplated or ongoing crime or fraud.")

■ It has been settled law since *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), that a corporation may claim an attorney-client privilege to prevent an attorney from testifying about confidential communications with the corporation as a client. See *United States v. Bartone*, 400 F.2d 459 (6th Cir.1968), *cert. denied*, 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969) (the privilege extends to corporations, but is not all inclusive.); *Fischer v. Wolfinbarger*, 45 F.R.D. 510 (W.D.Ky.1968).

In *Garner*, Judge Godbold found that the corporation claiming the privilege was not entitled to invoke it. He reached this conclusion after weighing the policy considerations upon which the privilege is based in the context of the claims in the particular case. This involved "a balancing of interests between injury resulting from disclosure and the benefit gained in the correct disposal of litigation." *Garner*, 430 F.2d at 1101.

Judge Godbold found it significant that a corporation "is an entity which in the per-

formance of its functions acts wholly or partly in the interest of others" and that it was those "others" who were seeking access to the substance of the communications in question. *Id.* He cautioned also that it "must be borne in mind that management does not manage for itself [because] the beneficiaries of its action are the stockholders." *Id.* Thus, while management has discretion in putting legal advice to use, its judgment "must stand on its own merits, not behind an ironclad veil of secrecy which under all circumstances preserves it from being questioned by those for whom it is, at least in part, exercised." *Id.*

The *Garner* court summarized its rationale for according corporations a narrowly confined attorney-client privilege and provided the basis for a "good cause" determination of its applicability in particular cases:

> The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

### D. Good Cause

There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. The court can freely use *in camera* inspection or oral examination and freely avail itself of protective orders, a familiar device to preserve confidentiality in trade secret and other cases where the impact of revelation may be as great as in revealing a communication with counsel.

*Id.* at 1103–04 (footnote omitted). We have quoted at length from *Garner* because it is the seminal case, and we agree with its rationale and adopt its holding.

### IV.

### A.

Selox presents three principal arguments for reversal.

### (1)

■ Selox maintains that *Garner* applies only in shareholder derivative actions and that all policy considerations favor applying the privilege in cases where the plaintiffs act only for their own benefit rather than on behalf of the corporation. This argument finds support in *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18 (9th Cir.1981). In *Weil* the court emphasized that the plaintiff in *Garner* sought damages on behalf of the corporation, whereas Weil sought to recover from the corporation only for her own benefit and on behalf of a proposed class. Declining to apply *Garner*, the *Weil* court upheld the corporation's claim of privilege.

To the extent *Weil* holds that the attorney-client privilege of a corporation is absolute in a case brought by individual shareholders in their own right, we disagree. Nothing in the language or the reasoning of *Garner*, as expressed by Judge Godbold, so limits its holding. Furthermore, the Fifth Circuit has rejected the *Weil* court's limitation on *Garner*. See *Ward v. Succes-*

*sion of Freeman,* 854 F.2d 780, 786 (5th Cir.1988). The fact that shareholder-plaintiffs seek recovery for themselves only may render their motives more suspect than if they bring a derivative action. Nevertheless, this is just one factor to be considered in determining whether good cause exists to deny the application of the privilege in a particular case. *Ward,* 854 F.2d at 786.

### (2)

█ Selox also contends that *Garner* does not apply because the corporation is not a party to the action. This argument overlooks the fact that the plaintiffs' entire case is based upon the claim that Robert White, by means of a fraudulent scheme, became the sole owner of Selox after "squeezing out" all minority shareholders. Thus, according to the plaintiffs' theory, White became the alter ego of the corporation.

We find nothing in *Garner's* reasoning that would preclude application of its principles in the present case merely because Selox is not a named party. The plaintiffs have relied on very specific instances in which they claim that Selox, under direct control of Robert White and pursuant to his fraudulent scheme, acted to their detriment as minority shareholders of Selox. The fact that Selox is not a defendant is not controlling. At this stage in the proceedings the district court was justified on the basis of the allegations and proof so far produced in considering Selox's claim of privilege under the *Garner* principles.

### (3)

█ Selox places heavy reliance upon the contention that there is no fiduciary relationship between it and its shareholders. Selox asserts that the "analytical focus" of cases where *Garner* is invoked to compel disclosure of privileged communications stresses "a requirement of a fiduciary relationship between the parties seeking the discovery and the parties resisting compelled privileged communications." Selox then seeks to demonstrate that under Tennessee law there is no fiduciary relation-

ship between a corporation and its shareholders. Selox's reliance on *Shaw v. Cole Mfg. Co.,* 132 Tenn. 210, 177 S.W. 479 (1915), is misplaced. *Shaw* held that a director's "trust relationship to the corporation" does not apply to a stockholder with whom the director deals in buying or selling stock of the corporation. The court stated that "[i]n buying or selling stock, directors may trade like an outsider, provided they do not affirmatively act or speak wrongfully, or intentionally conceal facts with reference to it." *Id.* at 212, 177 S.W. 479.

Later Tennessee cases have made it clear that one who is an officer, director and controlling stockholder owes a fiduciary duty to other stockholders. *Dale v. Temple Co.,* 186 Tenn. 69, 208 S.W.2d 344 (1948). In a case from Tennessee, this court cited *Dale* with approval, stating, "It is well-settled that dominant or controlling shareholders who exercise control over a corporation are fiduciaries." *Maggiore v. Bradford,* 310 F.2d 519, 521 (6th Cir.1962). In its most recent discourse on the question of fiduciary duty between shareholders and a corporation or among shareholders, the Tennessee Court of Appeals wrote that while a *minority* shareholder owes no fiduciary duty to the corporation or a majority shareholder, "a controlling shareholder owes a fiduciary duty to other shareholders." *Johns v. Caldwell,* 601 S.W.2d 37, 41 (Tenn.App.1980).

### B.

The plaintiffs' arguments respond to those of Selox, and adopt the reasoning of the magistrate judge.

### (1)

The plaintiffs contend that the *Garner* analysis applies to Selox's claim of privilege even though Selox is not a named party and this is not a derivative action. When Richardson advised White, White was the representative of Selox and had control of the corporation. Richardson's professional relationship to the corporation was exercised through White and this ac-

tion against White was, in effect, a suit against Selox.

### (2)

The plaintiffs, in reliance on the later Tennessee cases, assert that Robert White had a fiduciary duty to them as minority shareholders, and that he breached that duty. Their efforts to recover their losses should not be thwarted by the fact that White acted in the name of the corporation, which he controlled, thus permitting the corporation to shield White by its claim of privilege.

### (3)

The plaintiffs argue that no court has permitted invocation of the attorney-client privilege to prevent disclosure of evidence of a crime or fraudulent activity. They contend that sufficient evidence was produced to establish a prima facie case of a serious crime or illegality. This being so, neither Robert White nor Selox may rely on the attorney-client privilege to prevent Richardson's testimony concerning the specific matters about which the plaintiffs seek to question him. This is not a "fishing expedition," the plaintiffs contend. Rather, they have shown the likelihood that they will be able to prove their allegations and no veil of secrecy should keep them from developing their case fully.

### (4)

Finally, the plaintiffs argue that to the extent Richardson and White discussed personal rather than corporate matters (e.g. the divorce action in which Richardson also represented Robert White), there is no basis for a claim of privilege by Selox. The client, not the attorney, is the holder of the privilege, and Selox was not Richardson's client in these matters.

We agree with the plaintiffs' arguments set out above as (1) and (2), as discussed in Part V, infra. Arguments (3) and (4) are correct statements of the law relating generally to the attorney-client privilege, and apply to all who claim the privilege. We need not consider them further except to the extent they are "good cause" considerations under *Garner*.

### V.

### A.

We begin our analysis with several principles gleaned from cases heretofore discussed. The attorney-client privilege creates an exception to the general rule that a court is entitled to every witness's testimony, and therefore it must be narrowly construed. *Humphreys, Hutcheson,* 755 F.2d at 1219. The privilege never applies to testimony concerning ongoing or contemplated criminal or fraudulent activity. *In Re Antitrust Grand Jury,* 805 F.2d at 162. The attorney-client privilege extends to corporations, but it is not absolute. *United States v. Bartone,* 400 F.2d at 461. *Garner* only applies to cases in which the corporation stands in a fiduciary relationship to those seeking to abrogate the attorney-client privilege. There is a mutuality of interests between a corporation and its shareholders that precludes use of the privilege by management to deprive shareholders of information relating to their investments in the corporation. *Garner,* 430 F.2d at 1103. When a corporation asserts the privilege in an action by its shareholders, it is entitled to prevent disclosure of such information only if the policy underlying the privilege requires withholding evidence when balanced against the rights of shareholders and the fundamental responsibility of every person to testify. *Id.*

In conducting the required balancing, a court must take into account the nature of a corporation. Unlike an individual client who seeks legal advice, a corporation is an entity that acts on behalf of others, its shareholders. When the litigants seeking information from a corporation's attorney are minority shareholders, these litigants are the beneficiaries of a fiduciary relationship with the corporation and its controlling officers and directors. Although management has discretion as to how to apply legal advice, when shareholders present a colorable claim of fraud or criminal activity that is inimical to their

 **133**

interests as shareholders, they must be given an opportunity to establish good cause why the attorney-client privilege should not be invoked in their particular case.

### B.

Applying these principles, we have no difficulty in concluding that the magistrate judge and the district court properly refused to permit Selox to rely upon the attorney-client privilege in this case. Selox and Robert White owed fiduciary duties to the minority shareholder-plaintiffs. The claims of fraud on the part of Robert White, using his position as the controlling shareholder, director and CEO of Selox have been stated with particularity. The questions propounded to Richardson and the documents subpoenaed related to specific activities alleged to constitute part of an ongoing scheme to deprive the plaintiffs of the value of their investments.

We have examined each of the Selox–White transactions with minority shareholders and outside interests concerning which the plaintiffs sought testimony and documentary evidence from Richardson. In each case we conclude that the plaintiffs have established good cause for not permitting Selox to rely on the privilege. Application of *Garner's* non-exclusive list of good cause indicia leads inevitably to this result. The plaintiffs owned approximately forty percent of Selox's stock before White began his allegedly fraudulent activities. They claim to have been led to sell that stock, ultimately to White, through White's misrepresentations, refusals to divulge essential financial information about the corporation, and manipulation of the corporation's finances to his benefit and their detriment. The information is not readily available, if at all, from other sources. Selox, whether a party to the action or not, should not be permitted to prevent disclosure of the information sought by the plaintiffs on the basis of this record.

### C.

We note, of course, that this opinion is based on pleadings and discovery only. There has been no trial, and in affirming the district court's evidentiary ruling we have not decided the merits of the claims and intimate nothing about the final decision on the merits.

The orders that are the subject of this interlocutory appeal are affirmed.