PICARD CHEMICAL INC. PROFIT SHARING PLAN, et al., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PERRIGO COMPANY, et al., Defendants.

No. 1:95–CV–141.

United States District Court, W.D. Michigan, Southern Division.

Nov. 5, 1996.

Stephen C. Bransdorfer, Bransdorfer & Bransdorfer, PC, Grand Rapids, MI, Reed Richard Kathrein, Milberg, Weiss, Bershad, Hynes, LLP, San Francisco, CA, Ellen A. Gusikoff, Spector & Roseman, P.C., San Diego, CA, for Plaintiffs.

Stephen D. Turner, Law, Weathers & Richardson, Grand Rapids, MI, Joe A. Sutherland, Gardner, Carton & Douglas, Chicago, IL, Bruce W. Neckers, Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, MI, Michael B. Reuben, Gordon, Altman, Butowsky, Weitzen, Shalov & Wein, New York City, William K. Holmes, Warner, Norcross & Judd, LLP, Grand Rapids, MI, Dennis E. Glazer, Davis, Polk & Wardwell, New York City, for Defendants.

## TABLE OF CONTENTS

Facts ........................................................................................... 683
Discussion ..................................................................................... 684
 1. Attorney–Client Privilege ............................................................. 684
 2. Work Product Immunity ............................................................. 686
 3. Abrogations of the Attorney–Client Privilege and Work Product Immunity ........... 686
 a. Fiduciary Exception to the Attorney–Client Privilege ......................... 686
 b. Fiduciary Exception to Work Product Immunity ............................. 687
 c. Substantial Need and Undue Hardship ...................................... 687
 4. Waiver .............................................................................. 688
 a. Attorney–Client Privilege .................................................. 688
 (1) In Camera Review .................................................. 688
 (2) "At Issue" Waiver ................................................... 688
 (3) Disclosure to Third Parties .......................................... 689
 b. Work Product Immunity .................................................... 689
 5. Public Access to Court Records ...................................................... 690
Conclusion .................................................................................... 693

## OPINION

QUIST, District Judge.

This case arises out of the secondary public offering of Perrigo Company ("Perrigo") common stock held in October of 1993. Plaintiffs allege in their First Amended Consolidated Class Action Complaint that defendants perpetrated a "fraud on the market." This matter is before the Court on plaintiffs' opposition to defendant Perrigo's claim of privilege regarding a 198–page report ("Report") submitted by Peter Formanek to Perrigo's Board of Directors ("Board").

### Facts

Most of the pertinent facts of this case are set forth in this Court's Opinion dated July 25, 1996. *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F.Supp. 1101 (W.D.Mich.1996). Perrigo is also a nominal defendant in a derivative action pending before this Court in *Kearney v. Jandernoa*, No. 1:95CV823 (W.D.Mich.1995). *Kearney* was filed on behalf of Perrigo shareholders by Keith Kearney, a shareholder of Perrigo in his custodial capacity for his children. On May 22, 1995, Kearney sent a letter to Perrigo demanding that Perrigo: 1) commence litigation against all other named defendants in the class action, 2) void the indemnification agreement between Perrigo and other defendants in the class action, and 3) commence litigation against each officer and director and their beneficiaries and trusts who sold stock in the October 1993 public offering. Kearney included a draft derivative complaint with his letter accompanied by a statement informing the Board that the complaint would be filed if Kearney's demands were not met.

On June 12, 1995, the Board authorized Peter Formanek, who is said to be Perrigo's only disinterested independent director, to investigate all issues raised by Kearney's demand letter and to recommend to the Board the best course of action. The Board expressly authorized Formanek to retain independent legal counsel to assist him with the Report if he thought it necessary or appropriate. On August 15, 1995, the Board

adopted a resolution which stated that whatever conclusion Formanek reached as a result of his investigation would be "final in all aspects and binding on the Company."

To assist in his investigation and ultimate report, Formanek hired an attorney, Anton Valukas. Formanek and Valukas investigated all issues raised by Kearney's demand letter, the draft shareholder derivative complaint, and the class action lawsuit now before the Court. On November 11, 1995, the derivative plaintiffs filed a verified derivative complaint in *Kearney.* One month later, on December 15, 1995, Formanek submitted a 198–page report to the Board detailing the factual and legal basis for his decision that maintenance of the derivative suit would not be in Perrigo's best interests.

On March 26, 1996, Perrigo moved to dismiss the verified derivative complaint in *Kearney.* In its motion, Perrigo asserted that because Formanek, as the sole independent disinterested director, had conducted a reasonable investigation in good faith and determined that pursuing a lawsuit was not in Perrigo's best interests, Perrigo was insulated from liability pursuant to M.C.L. § 450.1495. Perrigo intentionally chose not to submit a copy of the Report to the Court with its motion to dismiss.

On July 22, 1996, this Court issued an Opinion and Order in *Kearney* granting the derivative plaintiffs' motion to compel production of the Report over Perrigo's objections that the Report was protected by both attorney-client privilege and work product immunity. *See Kearney v. Jandernoa,* 934 F.Supp. 863 (W.D.Mich.1996). This Court determined that whether Formanek made an adequate investigation and acted in good faith are questions which are difficult, if not impossible, to answer without the Report. *Id.* As a result, this Court held that it could not rule on defendant Perrigo's motion to dismiss in the derivative suit without first perusing the Report, and more importantly, without first allowing the derivative plaintiffs to read and comment upon the Report. *Id.*

### Discussion

Plaintiffs in the instant securities fraud class action also claim that they should have access to the Report. Perrigo claims that the Report is protected by both the attorney-client privilege and work product immunity.

If Perrigo can establish that the attorney-client privilege applies, then plaintiffs need to show that either the fiduciary exception applies or that Perrigo waived the attorney-client privilege. Additionally, if Perrigo can establish that work product immunity applies, then plaintiffs must show that there is substantial need for disclosure of the Report and that undue hardship would result if there were nondisclosure. Otherwise, plaintiffs must show that Perrigo waived work product immunity.

However, if Perrigo can show that both the attorney-client privilege and work product immunity apply to the Report, then only the test of substantial need and undue burden applies. *See In re Dayco Corp. Derivative Sec. Litig.,* 99 F.R.D. 616, 621 (S.D.Ohio 1983). If plaintiffs are not successful in showing substantial need and undue burden, then, as stated earlier, they must show that Perrigo waived the privilege and the immunity in order to prevail.

This Court now holds that the Report is protected by both the attorney-client privilege and work product immunity.

### 1. Attorney–Client Privilege

■ The attorney-client privilege is derived from the common law and is the oldest of the privileges for confidential communications. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The Supreme Court stated:

Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Id.* at 389, 101 S.Ct. at 682. Moreover, the privilege applies when the client is a corporation. *Id.* at 390, 101 S.Ct. at 683. The United States Court of Appeals for the Sixth Circuit noted that the Supreme Court in

*Upjohn* recognized the importance of the attorney-client privilege, however "[it] is not absolute; it applies only to the extent that it serves the 'broader public interests.'" *Fausek v. White*, 965 F.2d 126, 129 (6th Cir.1992). The Sixth Circuit set forth essential elements of the privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*Id.* (citing *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.1964)).

■ This Court holds that the Report satisfies the elements of the attorney-client privilege. Furthermore, failure to accord the Report attorney-client privilege would undermine the policy behind the privilege. As noted earlier, the Supreme Court in *Upjohn* recognized that full and frank communication between attorneys and their clients promotes the broader public interest. If the confidentiality of an internal investigation is not protected, especially for use in class actions, the corporation would be far less likely to allow the investigation to take place or would be far more likely to limit the scope of the investigation.

Plaintiffs argue that the communications made to counsel were not made in confidence. Plaintiffs claim that Perrigo knew that the Report would be admitted into evidence in a motion to dismiss the derivative suit. This Court does not agree with plaintiffs. In the first place, plaintiffs' argument assumes that Formanek would not act in good faith. This is an assumption the Court cannot make; in fact, a principal issue in the *Kearney* case is *whether* Formanek acted in good faith. When Formanek's investigation began, the possibility existed that he would recommend that Perrigo take the steps requested in Kearney's demand letter, in which case, no motion to dismiss in reliance upon the Report would ever be filed. Furthermore, Michigan law does not compel a corporation to file a motion to dismiss even if its independent director recommends such a course of action. Michigan law states that a "court shall dismiss a derivative proceeding if, *on motion by the corporation,* the court finds" that the only disinterested independent director has reached a determination in good faith after a reasonable investigation that pursuing the derivative action is not in the best interests of the corporation. M.C.L. § 450.1495 (emphasis added). If the corporation decides not to file a motion with the court, the independent director's determination has no legal effect. *See generally* C. Moscow et al, *Michigan's Independent Director,* 46 Bus.Law. 57 (1990) (independent director's authority depends upon his influence on the rest of the Board). In the instant case, however, the Board adopted a resolution that stated that whatever conclusion Formanek reached as a result of his investigation would be "final in all aspects and binding on the Company." As a result, this resolution, in conjunction with the Report, bound Perrigo to reject Kearney's demands. The fact that the Board thought it had the ability to delegate the ultimate decision to sue is further evidence that the authority rests with the corporation. And, even after its resolution was passed, Perrigo was not required to assert the statutory defense set forth in M.C.L. § 450.1495 in response to the derivative lawsuit. Thus, absent a motion to dismiss, the corporation has every reason to believe that its internal report will remain confidential.

■ Plaintiffs further argue that the Report concerned a business decision and not a legal decision. However, this Court in its July 22, 1996, Opinion stated that the Report contains a legal analysis of the securities fraud claims and that the Report discusses legal theories which are relevant to the securities fraud action. As the court in *Coleman v. American Broadcasting Co.,* 106 F.R.D. 201, 206 (D.C.1985) stated:

> legal and business considerations may frequently be inextricably intertwined. This is inevitable when legal advice is rendered in the context of commercial transactions or in the operations of a business in a corporate setting. The mere fact that business considerations are weighed in the

rendering of legal advice does not vitiate the attorney-client privilege.

*Id. See also Dunn v. State Farm Fire & Casualty Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (holding that investigative tasks that are related to rendering of legal services are privileged); *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91, 97 (S.D.N.Y.1993) (noting that the distinction between legal and business concerns is necessarily blurred in a corporate litigation context). Thus, the Report meets the requirement that it is considered legal advice.

▇ Plaintiffs also argue that Formanek, not Perrigo, was the client. However, Formanek was a director at Perrigo acting on behalf of the Board and not in his individual capacity. "[T]he independent director is intended to represent the corporation as a business enterprise and evaluate proposals in light of the corporation's best interests." C. Moscow et al, *supra*, at 59. *See also In the Matter of Bevill, Bresler & Schulman Asset Mgt. Corp.*, 805 F.2d 120, 124–25 (3d Cir. 1986) (a corporation's privilege consists of communications by corporate officials about corporate matters); *In re Grand Jury Proceedings, Detroit, Mich., August, 1977*, 570 F.2d 562, 563 (6th Cir.1978) (affirming district court's distinction between corporate and individual communications). Thus, Perrigo was the client and can invoke the privilege.

## 2. Work Product Immunity

Attorney work product consists of otherwise discoverable material "prepared in anticipation of litigation or for trial." Fed. R.Civ.P. 26(b)(3). Such information is accorded a qualified immunity from discovery and is only discoverable if the opposing party demonstrates a "substantial need" for the information and would be unable to obtain equivalent information from other sources without "undue hardship." *Id.*

▇ A document is prepared in anticipation of litigation if it is prepared because of the prospect of litigation. *Parry v. Highlight Indus., Inc.*, 125 F.R.D. 449, 451 (W.D.Mich.1989). The fact that both business and legal interests are reflected in the Report does not prevent the Report from

being immune. *See In re Bairnco*, 148 F.R.D. at 103.

▇ This Court agrees with those courts that have found reports of investigations into derivative claims prepared by board members and their counsel to be attorney work product. *See In the Matter of Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1314 (7th Cir. 1984) (assuming work product immunity where report was prepared by special litigation committee and counsel); *In re Dayco*, 99 F.R.D. at 619 n. 2 (finding that a special committee report is covered by work product immunity). Although the Report in the case at bar was prepared in anticipation of litigation in the derivative suit, work product immunity applies in the class action suit as well. *See Federal Trade Commission v. Grolier, Inc.*, 462 U.S. 19, 26, 103 S.Ct. 2209, 2214, 76 L.Ed.2d 387 (1983) (stating that work product immunity applies to material prepared in anticipation of other litigation) (citing among other cases *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 660 (6th Cir.1976)).

## 3. Abrogations of the Attorney–Client Privilege and Work Product Immunity

Although the Report is protected pursuant to the attorney-client privilege and the qualified work product immunity, there are some circumstances where plaintiffs may show that fairness would require that they have access to the Report.

### a. Fiduciary Exception to the Attorney–Client Privilege

▇ A fiduciary exception to the attorney-client privilege has been recognized by the Sixth Circuit in *Fausek v. White*, 965 F.2d 126 (6th Cir.1992). In *Fausek*, the Sixth Circuit adopted the reasoning in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) that a corporation owes fiduciary duties to certain parties. *Fausek*, 965 F.2d at 130. If a fiduciary duty is owed, the protection of the privilege can be removed where "good cause" is shown that the privilege should not be invoked. *Id.* The Sixth Circuit set forth indicia that contribute to a decision of whether good cause exists:

the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. *Id.* at 130. The Sixth Circuit rejected the argument that *Garner* applied only to shareholder derivative actions:

> The fact that shareholder-plaintiffs seek recovery for themselves only may render their motives more suspect than if they bring a derivative action. Nevertheless, this is just one factor to be considered in determining whether good cause exists to deny the application of the privilege in a particular case.

*Id.* at 131 (citing *Ward v. Succession of Freeman,* 854 F.2d 780, 786 (5th Cir.1988) (stating that in non-derivative shareholder actions it should be more difficult to show "good cause")). Thus, Plaintiffs' burden of showing "good cause" as to why the Report should not be subject to the attorney-client privilege in the class action securities fraud suit is higher than in the shareholders' derivative suit. Moreover, documents pertaining to the litigation itself deserve higher protection. *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 31 (N.D.Ill.1980).

### b. Fiduciary Exception to Work Product Immunity

■ This Court agrees with those courts that hold that the *Garner* doctrine does not apply to work product immunity. *See, e.g., Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1423 (11th Cir.1994), *modified,*

30 F.3d 1347 (11th Cir.1994); *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1239 (5th Cir.1982); *In re Rospatch Sec.Litig.,* Nos. 1:90–CV–805–07, 1991 WL 574963 at *13 (W.D.Mich. March 14, 1991). "The work product privilege is based on the existence of an adversarial relationship, not the quasi-fiduciary relationship analogized in *Garner.*" *In re Int'l Sys. & Controls,* 693 F.2d at 1239. Thus, the mutuality of interest that is the rationale behind the fiduciary exception expires upon anticipation of litigation. *Id.* Moreover, the plain language of Rule 26(b)(3) is inconsistent with *Garner* because when the Rule was adopted the "good cause" standard was rejected in favor of the substantial need/undue hardship test. *Id.* at 1240 (citing 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2023 (1970)).

### c. Substantial Need and Undue Hardship

■ Since the elements for work product immunity have been established, the plaintiffs need to show substantial need and undue hardship. Fed.R.Civ.P. 26(b)(3). As noted earlier, since both the attorney-client privilege and work product immunity apply, plaintiffs will have to satisfy the test of substantial need and undue hardship. *See In re Dayco,* 99 F.R.D. at 621.

■ Plaintiffs have failed to establish that they have substantial need for the Report or that undue hardship exists if they are not provided with the Report. Further, the fact that the Report was required to be disclosed in the derivative suit in *Kearney* does not require disclosure in the class action lawsuit now before the Court. Unlike the derivative action in *Kearney,* the class action securities fraud plaintiffs have no need to rebut the presumption that Formanek acted in good faith and made a reasonable investigation. In addition, these plaintiffs have not shown that the information is not available through other means. *See Conkling v. Turner,* 883 F.2d 431, 435 (5th Cir.1989) (determining that information could be obtained through other means than relying on confidential information); *In re Grand Jury Subpoena Dated November 8, 1979,* 622 F.2d 933,

936 (6th Cir.1980) (stating that government had not asserted that certain information was not available to it through other means). Thus, although the plaintiffs in the derivative suit in *Kearney* were able to establish that there was substantial need for the Report, plaintiffs in this class action securities fraud suit have not done so.

### 4. Waiver

As this Court has determined, the Report is protected by the attorney-client privilege and work product immunity. Additionally, plaintiffs have been unable to establish that they have substantial need for the Report or that they will suffer undue hardship if they do not have access to the Report.

 However, plaintiffs may be able to show that Perrigo waived the privilege and the immunity. Separate standards dictate the waiver of the attorney-client privilege and work product immunity. *See In re Grand Jury*, 106 F.R.D. 255, 256 (D.N.H. 1985) (stating that the work product doctrine is distinct from and broader than the attorney-client privilege (citing *United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975))). *See also* 4 James Wm. Moore et al., 4 *Moore's Federal Practice* ¶ 26.15[4] (pointing out that the work product doctrine departs from the at-torney-client privilege as to the issue of waiv-er and exceptions). In order to prevail on their waiver theory, plaintiffs must show that Perrigo waived both the attorney-client privi-lege and work product immunity. *See In re Dayco*, 99 F.R.D. at 619 n. 2. *See also Hodges, Grant & Kaufmann v. United States Gov't*, 768 F.2d 719, 721 (5th Cir.1985) (al-though not subject to the attorney-client privilege, materials may be protected by work product immunity).

#### a. Attorney–Client Privilege

 The attorney-client privilege may be waived if confidential communications have been disclosed to third parties or if the privi-leged material was used in a manner not consistent with maintaining confidentiality.

#### (1) *In Camera Review.*

 Plaintiffs argue that Perrigo waived its attorney-client privilege by sub-mitting the Report to this Court in the *Kear-ney* case for an *in camera* review. However, in *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), the Su-preme Court recognized that:

> disclosure of allegedly privileged materials to the district court for purposes of deter-mining the merits of a claim of privilege does not have the legal effect of terminat-ing the privilege. Indeed, this Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection. . . . and the practice is well established in the federal courts.

*Id.* at 568–69, 109 S.Ct. at 2629 (citation omitted). However, the Court went on to say that the question of the propriety of review turns on the underlying policies of the privilege. *Id.* at 569, 109 S.Ct. at 2629. The threshold is not a stringent one and, in fact, a lesser evidentiary showing is needed to trig-ger an *in camera* review than to overcome the privilege. *Id.* at 572, 109 S.Ct. at 2631.

This Court holds that Perrigo's submission to the Court of the Report for *in camera* review in the instant case was appropriate. The chances were very likely that the Report did contain confidential material relating to attorney-client communications. Thus, Per-rigo did not waive its attorney-client privi-lege by submitting the Report to the Court for review.

#### (2) *"At Issue" Waiver.*

 Plaintiffs also argue that since Perri-go put the Report "at issue" in the *Kearney* litigation, the attorney-client privilege had been waived.

In *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251 (6th Cir.1996), the Sixth Circuit recognized that if a corporation does not reveal a significant part of a report of a special review committee and does not sum-marize evidence found in the report, then the attorney-client privilege would not be deemed waived. *Id.* at 254 (relying on *In re Dayco*, 99 F.R.D. at 619). In its motion to dismiss, Perrigo did not reveal any of the

Report, nor did it summarize evidence contained in the Report. The references to the Report were general in nature and lacking substantive content. *See In re Grand Jury,* 78 F.3d at 254.

■ Moreover, the policy behind that "at-issue" waiver is that it would be inherently unfair for one party to rely on a document in a dispositive motion without the other party having access to it in order to respond appropriately. The Eleventh Circuit stated that "courts generally have not found a waiver where the party attacking the privilege has not been prejudiced." *Cox,* 17 F.3d at 1417. *See also Kelsey–Hayes Co. v. Motor Wheel Corp.,* 155 F.R.D. 170, 172 (W.D.Mich.1991) (stating that the underlying rationale of allowing disclosure of a document due to an "at-issue" defense is one of "fairness"). In deciding privilege issues, the Court must take into consideration the policy behind the privilege and issues of fairness. *See Upjohn,* 449 U.S. at 389, 101 S.Ct. at 682. The derivative plaintiffs in *Kearney* needed to review the Report and prepare their responses in order to refute Perrigo's motion to dismiss. Plaintiffs in the case now before the Court request the same treatment; however, they have been unable to show that they are prejudiced in any way in the class action suit now before the Court. Thus, Perrigo did not waive its attorney-client privilege by filing a motion to dismiss in the derivative suit in *Kearney.*

### (3) *Disclosure to Third Parties.*

■ Plaintiffs further argue that Perrigo waived its attorney-client privilege by disclosing the Report to third parties. However, nothing in the record indicates that the Report was disclosed to anyone other than the Perrigo Board of Directors. Thus, plaintiffs' argument fails. The attorney-client privilege was not waived.

### b. **Work Product Immunity**

■ Even if Perrigo is deemed to have waived the attorney-client privilege in the class action lawsuit, this does not necessarily mean that Perrigo also has waived work product immunity. *See In re Grand Jury,* 106 F.R.D. at 257 (citing *Handgards,*

*Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976)).

Work product immunity differs from attorney-client privilege in that it does not exist to protect a confidential relationship but promotes the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent. *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980) (citing *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947). Work product immunity can be waived by disclosures which are inconsistent with the adversary system. *Id.*

■ The fact that the Report was required to be disclosed in the shareholders' derivative lawsuit in *Kearney* does not require disclosure in the class action lawsuit now before the Court. In *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir. 1989), the Fifth Circuit held that:

> When a party is compelled to disclose privileged work product and does so only after objecting and taking other reasonable steps to protect the privilege, one court's disregard of the privileged character of the material does not waive the privilege before another court.

*Id. See also In re Grand Jury Subpoena Dated November 8, 1979,* 622 F.2d at 935 (finding that material prepared for an earlier grand jury investigation was protected in another grand jury investigation of the same matter). In *Kearney,* Perrigo did object to the disclosure of the Report. Additionally, Perrigo submitted the Report to the Court for an *in camera* review to determine if the Report consisted of privileged material. *See Zolin,* 491 U.S. at 568–69, 109 S.Ct. at 2629 (finding that *in camera* review appropriate for determination of privileged character of documents); *Danning v. Donovan,* 62 B.R. 1007, 1015–16 (Bankr.C.D.Cal.1986) (holding that a party asserting a privilege should submit the privileged documents to the court for an *in camera* review and prove facts showing the privilege is applicable). Thus, by objecting to the disclosure of the Report and by submitting it to the Court for *in camera* review, Perrigo took reasonable steps to in-

sure that Report would be protected. Furthermore, in *Federal Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 27–28, 103 S.Ct. 2209, 2214–15, 76 L.Ed.2d 387 (1983), the Supreme Court stated:

> Under the current state of the law relating to the privilege, work-product materials are immune from discovery unless the one seeking discovery can show substantial need in connection with subsequent litigation.... Respondent urges that ... the requested documents must be disclosed because the same documents were ordered disclosed during discovery in previous litigation. It does not follow, however, from an ordered disclosure based on a showing of need that such documents are routinely available to litigants.

*Id.* Thus, plaintiffs' access to the Report is not available unless they can show substantial need for the Report in the class action lawsuit now before this Court.

 Work product immunity can be waived by voluntary disclosures to potential adversaries. Plaintiffs claim that Perrigo waived work product immunity by submitting the Report to the Board, members of whom were potential defendants in the class action lawsuit. However, the concern of the immunity is to protect trial preparation from adversaries, not from those who have a common interest in a matter. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir.1992). *See also United States v. Moss*, 9 F.3d 543, 550 (6th Cir.1993) (citing *Haines*). The members of the Board who were potential defendants in the class action suit had a similar interest as the potential defendant Perrigo. They were not adversaries; in fact, they had common adversaries. Thus, there was not a waiver of work product immunity.

### 5. Public Access to Court Records

 In *Nixon v. Warner Communications*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the Supreme Court recognized a common law right of access to judicial records allowing public inspection and copying. *Id.* at 597, 98 S.Ct. at 1312. *See also Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996) (recognizing a long-established tradition which values public access to court proceedings); *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir.1994) ("The existence of a common law right of access to judicial records is beyond dispute."); *United States v. Beckham*, 789 F.2d 401, 419 (6th Cir.1986) (citing *Nixon* for the same conclusion); *Matter of Continental*, 732 F.2d at 1308 (finding that the public's right of access is fundamental to a democratic state). Moreover, as the Second Circuit explained:

> This preference for public access is rooted in the public's first amendment right to know about the administration of justice. It helps safeguard "the integrity, quality, and respect in our judicial system" and permits the public to "keep a watchful eye on the workings of public agencies."

*In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir.1994) (citations omitted). *See also Pepsico, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir.1995) (stating that judicial opinions belong to the public which underwrites the judicial system that produces them); *Matter of Continental*, 732 F.2d at 1308 (these policies relate to insuring the quality, honesty and respect for the legal system). Thus, the public has a common law right to access judicial records.

A judicial record must have a role in the adjudication process in order to be accessed by the public. *Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982). When a district court relies upon a document " 'in determining the litigants' substantive rights, and in performing its adjudicatory function.... [t]he common law presumption of public access' " attaches to the document. *Id.* (citing *Federal Trade Comm'n v. Standard Financial Mgt. Corp.*, 830 F.2d 404, 410 (1st Cir.1987)). *See also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir.1994) (taking into consideration whether a document was filed with, interpreted, or enforced by the district court). In *Matter of Continental*, the court stated:

> we cannot agree that the presumption does not apply to a motion to terminate. Continental's motion was designed to (and did) result in the dismissal of claims against several defendants. The district court was required to make complex factual and legal

determinations in a proceeding which has been characterized as a 'hybrid summary judgment motion.' We hold, therefore, that the presumption of access applies to the hearings held and evidence introduced in connection with Continental's motion to terminate.

*Matter of Continental,* 732 F.2d at 1309 (citation omitted).

 "[T]he presumption of access normally involves a right of *contemporaneous* access." *Matter of Continental,* 732 F.2d at 1310 (emphasis in original). *See also In re Oliver,* 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682 (1948) (contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power); *Beckham,* 789 F.2d at 420 (denial of contemporaneous right of access would result in denial of right to records at a time when the issues remained a matter of public interest). The moment evidence becomes part of the judicial records, the policy underlying public access to judicial records would be furthered by immediate access to those records. Perrigo's filing of the motion to dismiss in *Kearney* did not, by itself, make the Report part of the judicial records. However, at that point in time when Perrigo submits the Report to this Court in support of its motion to dismiss, which must occur at some point before this Court rules on Perrigo's motion, the submission of the Report in order to induce this Court's reliance upon the good faith and reasonable investigation of Formanek will make the Report part of this Court's judicial records.

 The right to inspect and copy judicial records, however, is not absolute; district courts have the discretion to deny or permit access to judicial records. *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312. In the Sixth Circuit, only the most compelling reasons justify the non-disclosure of judicial records. *See In re Knoxville News–Sentinel Co.,* 723 F.2d 470, 476 (6th Cir.1983); *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n,* 710 F.2d 1165, 1179 (6th Cir.1983).

 In order to determine whether or not to disclose judicial records, the court needs to take into consideration "[t]he importance of material to the adjudication, the damage disclosure might cause, and the public interest in such materials." *Joy,* 692 F.2d at 893. In order to determine if the public is allowed access to the Report, the Court must balance the public interest underlying the Report against Perrigo's interest in confidentiality. *See Matter of Continental,* 732 F.2d at 1313. In *Matter of Continental,* the court recognized the importance of the attorney-client privilege and work product immunity and the usefulness confidentiality would serve in special litigation committee investigations; nevertheless, "when the report is used in an adjudicative procedure to advance the corporate interest, there is a strong presumption that confidentiality must be surrendered." *Matter of Continental,* 732 F.2d at 1313–15. The court then determined that once a privileged document is used in the adjudication stage of litigation then the interest in public access to the document outweighs the interest in confidentiality. *Id.* Moreover, the Sixth Circuit has indicated that the greater the motivation of a corporation to shield its management operations, the greater becomes the public's interest in needing to know. *Brown & Williamson Tobacco Corp.,* 710 F.2d at 1180.

 This Court believes that the Report should not serve as a source of " 'business information that might harm a litigant's competitive standing.' " *Beckham,* 789 F.2d at 419 (dissenting opinion) (quoting *Nixon,* 435 U.S. at 598, 98 S.Ct. at 1311). If a special litigation report is clearly and significantly damaging to a corporation, then there may be greater reluctance to require disclosure. *Matter of Continental,* 732 F.2d at 1315. However, "[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson Tobacco Corp.,* 710 F.2d at 1179. In the instant case, Perrigo has not directed this Court's attention to anything that appears to be damaging to Perrigo in the conduct of its business of manufacturing and marketing private label products. Moreover, Perrigo has not shown

any compelling reason for the Court to deny the public access to the Report.

This Court recognizes consequences of ruling that the public should have access to the Report. For example, as stated by another district court within the Sixth Circuit:

> Almost any corporate misjudgment or misfortune can serve as a fertile ground in which disgruntled stockholders could sprout claims of a breach of the duties of due care.... If, in such demand refused cases, stockholders can thereafter on a motion to terminate threaten public disclosure of the corporation's special and confidential reports, this would strengthen the stockholders' hand and bargaining power because of the potential risk of embarrassment or actual harm to the corporation. This might invite less scrupulous and self-interested stockholders to attempt to "graymail" the corporation into settlement. This increased bargaining leverage for stockholders threatening public disclosure of confidential corporate information and corporate thinking is greater than the ordinary "nuisance value" of a lawsuit of no merit. Thus, expanded judicial review of corporate decision-making over alleged wrongdoing, with its threat of likely public disclosure, increases the "settlement value" of marginal derivative suits and will likely lead to an increase in derivative "strike suits" intended to leverage a quick settlement. It is also likely to limit internal corporate reviews in scope and in documentation, making them a less effective instrument of corporate policy.

*In re Consumers Power Co. Deriv. Litig.*, 132 F.R.D. 455, 463 n. 20 (E.D.Mich.1990). Further, as Judge Pell, in *Matter of Continental*, pointed out:

> shareholder plaintiffs are quite often little more than a formality for purposes of the caption rather than parties with a real interest in the outcome because at best they realize only an appreciation of the value of their shares which might be sub-

stantial in a close corporation but are of dubious benefit in [a publicly held corporation].... the real incentive in bringing the actions is usually not the hope of the return to the corporation but the hope of handsome fees to be recovered by plaintiffs' counsel.

*Matter of Continental*, 732 F.2d at 1317 (concurring in part and dissenting in part). Regardless, the importance of public access to judicial records is more important then any potential consequences that might result from disclosure. This Court firmly believes that if derivative actions were routinely dismissed on the basis of "secret documents," confidence in the administration of justice would be severely weakened. *See Joy*, 692 F.2d at 893.

This Court finds that once the Report is submitted to this Court to induce reliance upon the Report, the public interest in open adjudication outweighs the interests underlying the attorney-client privilege and work product immunity. Therefore, although the Report is protected by both the attorney-client privilege and work product immunity, the Report will have to be disclosed to the public once the Report is submitted to the Court for this Court's determination of whether Formanek made a good faith judgment after a reasonable investigation.

This ruling gives Perrigo control of whether and when the Report will be submitted and become part of the public record. For example, Perrigo may withdraw its motion to dismiss in *Kearney* if it does not wish to have the Report become part of the judicial records to which the public will have access. *See In re North*, 21 F.3d 434, 435 (D.C.Cir. 1994) (allowing movants the opportunity to withdraw their motions if they do not want certain documents disclosed). Or Perrigo may wait until the conclusion of all discovery in *Kearney* before submitting the Report to the Court. It is also possible that after some discovery the derivative plaintiffs may conclude that they have no case.[1]

---

1. The purpose of M.C.L. § 450.1495 is to save a corporation the aggravation and expense of defending a meritless derivative case. *See* Joel Seligman, *The Disinterested Person: An Alternative Approach to Shareholder Derivative Litiga-* tion, 55 Law & Contemp.Probs. 357, 365 (1992). The statute, however, does not totally dispose of all factual issues. As this Court stated in its Opinion dated July 22, 1996, in *Kearney v. Jandernoa*, No. 1:95–CV–823 (W.D.Mich.1995):

### Conclusion

For the foregoing reasons, this Court holds that the Report is protected by the attorney-client privilege and by work product immunity. In addition, plaintiffs have been unable to show that they would suffer substantial harm or undue hardship if they did not have access to the Report. Moreover, Perrigo has waived neither the privilege nor the immunity in the class action suit with respect to the Report. However, once the Report is submitted to the Court for this Court's determination of whether or not Formanek made a good faith judgment after a reasonable investigation, the public, including the securities class action plaintiffs, will have access to the Report.

An Order consistent with this Opinion will be filed.

### ORDER

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that plaintiffs' opposition to Perrigo's claim of privilege (docket no. 222) is **DENIED**.

**IT IS FURTHER ORDERED** that the Report submitted by Peter Formanek to Perrigo's Board of Directors is protected by the attorney-client privilege and work product immunity. If the Report is submitted to the Court for this Court's performance of its adjudicatory function in determination of the litigants' substantive rights, then the Report will become part of the judicial records to which the public will have access.

whether Mr. Formanek was independent; whether Mr. Formanek was disinterested; whether Mr. Formanek was "all disinterested independent directors;" whether Mr. Formanek made a determination; whether Mr. Formanek acted in good faith; and whether Mr. Formanek conducted a reasonable investigation upon which his conclusions were based, are all questions of fact.

Corporations that intend to rely on M.C.L. § 450.1495, may wish to withhold filing a motion to dismiss and, instead, to assert the statute as an affirmative defense, try to limit initial discovery on the factual issues raised by the affirmative defense, and, upon completion of that discovery, file a motion for dismissal under Michigan rules or for summary judgment under the Federal Rules of Civil Procedure, if necessary and desirable.